1

SEYFARTH SHAW LLP
Nick C. Geannacopulos (SBN 114822) ngeannacopulos@seyfarth.com

2

G. Daniel Newland (SBN 087965) dnewland@seyfarth.com
Emily Barker (SBN 275166) ebarker@seyfarth.com

3

560 Mission Street, 31st Floor
San Francisco, California 94105

4

Telephone:     (415) 397-2823
Facsimile:     (415) 397-8549

**REDACTED VERSION OF DOCUMENT
SOUGHT TO BE SEALED**

5

6

Attorneys for Defendant
SEDGWICK LLP

7

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

11

TRACI RIBEIRO, on behalf of herself and all
others similarly situated,

Case No. 3:16-CV-4507 WHA

12

Plaintiff,

**NOTICE OF MOTION AND MOTION OF
DEFENDANT SEDGWICK LLP FOR AN
ORDER COMPELLING ARBITRATION
AND STAYING CIVIL ACTION PENDING
ARBITRATION**

13

v.

14

SEDGWICK LLP,

15

Defendant.

*[Filed concurrently with Declarations of Bruce
D. Celebrezze and Nick C. Geannacopulos;
[Proposed] Order]*

16

17

18

Date:          September 29, 2016
Time:          8:00 am
Ctrm:          8, 19th Fl.

19

20

Trial Date:   Not Set
Date Action Filed:  July 26, 2016

21

22

23

24

25

26

27

28

---

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY ACTION
BY DEFENDANT SEDGWICK LLP

**TO PLAINTIFF TRACI RIBEIRO AND HER ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on September 29, 2016, at 8:00 am or as soon thereafter as the matter can be heard, in Courtroom 8, 19th floor of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California, defendant Sedgwick LLP ("Sedgwick"), a law firm, will and hereby does move for an order under the California Arbitration Act, California Code of Civil Procedure section 1281 *et seq.,* and the Federal Arbitration Act, 9 United States Code, section 1 *et seq.,* compelling Plaintiff, a partner in the law firm, to arbitrate her claims pursuant to a binding arbitration agreement, and for an order staying proceedings pending arbitration.

Sedgwick is entitled to an order compelling arbitration, pursuant to the California Arbitration Act and the Federal Arbitration Act, because Plaintiff signed a binding and enforceable partnership agreement in which she agreed to arbitrate                    **SEALED**

.  Plaintiff's claims in this case fall squarely within the terms of the partnership agreement she signed when she accepted Sedgwick's offer of partnership in the firm. Sedgwick has demanded that Plaintiff honor her written contractual obligation to arbitrate her claims, but Plaintiff has refused.  Therefore, other than by this Motion, Sedgwick has no adequate remedy to compel the binding arbitration to which Plaintiff expressly agreed.  Additionally, pursuant to 9 U.S.C. § 3, Sedgwick moves the Court for an order staying this judicial action pending arbitration.

This Motion is based upon this Notice of Motion and the attached Memorandum of Points and Authorities, the Declarations of Bruce D. Celebrezze and Nick C. Geannacopulos, served and filed concurrently herewith, and all exhibits attached thereto, all pleadings, records and papers on file in this action, and such other further evidence and arguments as may be presented at the time of the hearing on this matter.

DATED: August  23, 2016                    SEYFARTH SHAW LLP


By:  */s/ Nick C. Geannacopulos*
Nick C. Geannacopulos
G. Daniel Newland
Emily Barker
Attorneys for Defendant
SEDGWICK LLP

i

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................**Error! Bookmark not defined.**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

    I.       INTRODUCTION ............................................................................ 1

    II.      FACTUAL AND PROCEDURAL BACKGROUND........................................ 1

    III.    ARGUMENT ................................................................................. 5

          A.      The Arbitrator Must Decide Arbitrability ................................. 5

          B.      The Court Has The Authority To Compel Arbitration ..................... 7

          C.      Plaintiff Agreed To Arbitrate The Claims She Asserts In This Case ................... 11

          D.      The Agreement Is Enforceable ............................................ 12

                1.      Sedgwick has not waived the right to compel arbitration...................... 12

                2.      No grounds exist to revoke the ADR Provision........................................ 13

                      a.      Neutral Arbitrator.................................................. 13

                      b.      Adequate Discovery................................................ 14

                      c.      Written Award .................................................... 15

                      d.      No Limitation on Remedies ........................................ 16

                      e.      Unreasonable Costs................................................ 16

                  3.      The Agreement is not unconscionable ..................................... 17

                      a.      The ADR Provision is not substantively unconscionable............. 17

                      b.      The ADR Provision is not procedurally unconscionable............. 18

                      c.      Any unconscionable terms can be severed and the remainder of the ADR Provision can be enforced ....................... 20

    IV.    CONCLUSION................................................................................ 21

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*American Title Ins. Co. v. Lacelaw,*
   861 F.2d 224 (9th Cir. 1988) ............................................................................................6

*Anderson v. Pitney Bowes, Inc.,*
   No. 04-4808 SBA, 2005 WL 1048700, at *2-4 (N.D.Cal. May 4, 2005) (Armstrong,
   J.)...................................................................................................................................7

*AT&T Technologies., Inc. v. Communications Workers of America,*
   475 U.S. 643 (1986)..........................................................................................9, 10, 11, 12

*Brennan v. Opus Bank,*
   796 F.3d 1125 (9th Cir. 2015) ........................................................................................5, 6

*Buckeye Check Cashing, Inc. v. Cardegna,*
   546 U.S. 440 (2006)...........................................................................................................9

*Carter v. Countrywide Credit,*
   362 F.3d 294 (5th Cir. 2004) ...........................................................................................17

*Circuit City Stores, Inc. v. Adams,*
   532 U.S. 105 (2001)...........................................................................................................8

*Circuit City Stores, Inc. v. Najd,*
   294 F.3d 1104 (9th Cir. 2002) .........................................................................................12

*Citizens Bank v. Alafabco, Inc.,*
   539 U.S. 52 (2003).............................................................................................................8

*Clarium Capital Mgmt., LLC v. Choudhury,*
   No. 08-5157-SBA, 2009 WL 331588 (N.D.Cal. Feb. 11, 2009) (Armstrong, J.) ................6

*CompuCredit Corp. v. Greenwood,*
   132 S.Ct. 665 (2012)..........................................................................................................8

*Davis v. O'Melveny,*
   485 F.3d 1066 (9th Cir. 2007) (abrogated in part on other grounds by *AT&T Mobility
   Co. v. Concepcion*, 563 U.S. 333 (2011))...........................................................................19

*EEOC v. Woodman of Life Ins. Soc.,*
   479 F.3d 561 (8th Cir. 2007) ...........................................................................................17

*Ferguson v. Corinthian Colls, Inc.*
   733 F.3d 928 (9th Cir. 2013) ...........................................................................................19

*Ferguson v. Countrywide Credit Indus.*,
   298 F.3d 778 (9th Cir. 2002) ........................................................................14

*Fleet Tire Serv. of North Little Rock v. Oliver Rubber Co.*,
   118 F.3d 619 (8th Cir. 1997) ........................................................................11

*Galen v. Redfin Corp.*,
   Nos. 14-cv-05229-TEH; 14-cv-05234-TEH, 2015 WL 7734137 (N.D.Cal. Dec. 1,
   2015) ..........................................................................................................6

*Gilbert v. Bank of America*,
   2015 WL 1738017 (N.D.Cal. 2015) ...............................................................19

*Grabowski v. Robinson*,
   817 F.Supp.2d 1159 (S.D.Cal. 2011) .............................................................15

*Green Tree Fin. Corp.-Ala. v. Randolph*,
   531 U.S. 79 (2000) ......................................................................................10

*Guidewire Software Inc. v. Chookaszian*,
   2012 WL 5379589 (N.D.Cal. 2012) ................................................................7

*Keuhner v. Dickinson & Co.*,
   84 F.3d 316 (9th Cir. 1996) ..........................................................................10

*Kimble v. Rhodes Cool., Inc.*,
   No. 10-5786-EMC, 2011 WL 2175249 (N.D.Cal. June 2, 2011) (Chen, J.) ...........6

*Mohamed v. Uber Techs., Inc.*,
   109 F.Supp.3d 1185 (N.D.Cal. 2015) .............................................................20

*Monex Deposit Co. v. Gilliam*,
   671 F.Supp.2d 1137 (C.D.Cal. 2009) .............................................................19

*Mortensen v. Bresnan Communications, LLC*,
   722 F.3d 1151 (9th Cir. 2013) .........................................................................9

*Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*,
   460 U.S. 1 (1983) ..........................................................................................9

*Muriithi v. Shuttle Express Inc.*,
   712 F.3d 173 (4th Cir. 2013) ........................................................................16

*United States ex rel. Oliver v. Parsons Co.*,
   195 F.3d 457 (9th Cir. 1999) ........................................................................16

*Openshaw v. FedEx Ground Package Sys., Inc.*,
   731 F.Supp.2d 987 (C.D.Cal. 2010) ..............................................................14

iv

*Oracle America v. Myriad Group A.G.*,
    734 F.3d 1069 (9th Cir. 2013) ..................................................................................6

*Otashe Golden v. Dameron Hospital Association, et al.*,
    2012 WL 4208779 (E.D.Cal. Sept. 19, 2012) .........................................................8

*Qualcomm Inc. v. Nokia*,
    466 F.3d 1366 (Fed. Cir. 2006) ...............................................................................7

*Rent -A-Center, West, Inc., v. Jackson*,
    561 U.S. 63 (2010) ...................................................................................................5

*Simula, Inc. v. Autoliv*,
    175 F.3d 716 (9th Cir. 1999) .............................................................................7, 11

*Smith v. Ford Motor Co.*,
    462 Fed.Appx. 660 (9th Cir. 2011) ........................................................................18

*Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*,
    559 U.S. 662 (2010) .................................................................................................8

*Visa USA, Inc. v. Maritz, Inc.*,
    No 07-05585-JSW, 2008 WL 744832 (N.D.Cal. Mar. 18, 2009 (White, J.) (holding
    the same) .................................................................................................................7

*Zenelaj v. Handybook Inc.*,
    82 F.Supp.3d 968 (N.D.Cal. 2015) (Henderson, J.)..............................................6, 7

**State Cases**

*Arguelles-Romero v. Superior Court*,
    184 Cal.App.4th 825 (2010) ..................................................................................17

*Armendariz v. Foundation Health Psychcare Services, Inc.*,
    24 Cal.4th 83 (2000) ...................................................................................... *passim*

*Bigler v. Harker School*,
    213 Cal.App.4th 727 (2013) ..................................................................................10

*Bolanos v. Khalatian*,
    231 Cal.App.3d 1586 (1991) .................................................................................20

*Buckhorn v. St. Jude Heritage Medical Group*,
    121 Cal.App.4th 1401 (2004) ................................................................................10

*Cione v. Foresters Equity Servs., Inc.*,
    58 Cal.App.4th 625 (1997) ...............................................................................9, 12

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY ACTION
BY DEFENDANT SEDGWICK LLP

*Coast Plaza Doctors Hospital v. Blue Cross of California*,
   83 Cal.App.4th 677 (2000) ........................................................................................................10

*Craig v. Brown & Root, Inc.*,
   84 Cal.App.4th 416 (2000) ........................................................................................................11

*Dotson v. Amgen, Inc.*,
   181 Cal.App.4th 975 (2010) ...............................................................................................14, 20

*Grafton Partners L.P. v. Superior Court*,
   36 Cal.4th 944 (2005) ................................................................................................................8

*Larkin v. Williams, Wooley, Cogswell, Nakazawa & Russell*,
   76 Cal.App.4th 227 (1999) ........................................................................................................10

*Madden v. Kaiser Found. Hosp.*,
   17 Cal.3d 699 (1976) ................................................................................................................8

*Malone v. Superior Court*,
   226 Cal.App.4th 1551 (2014) ................................................................................................5, 6

*Marin Storage & Trucking, Inc.,* 89 Cal.App.4th 1042, 1049 (2010) .......................................20

*Martinez v. Master Protection Corp.*,
   118 Cal.App.4th 107 (2004) ......................................................................................................16

*McManus v. CIBS World Mkt. Corp.*,
   109 Cal.App.4th 76 (2003) ........................................................................................................17

*Mercuro v. Sup. Ct.*,
   96 Cal.App.4th 167 (2002) ..................................................................................................15, 18

*Mission Viejo Emergency Med. Associates v. Beta Healthcare Grp.*,
   197 Cal.App.4th 1146 (2011) ....................................................................................................10

*Moncharsh v. Heily & Blasé*,
   3 Cal.4th 1 (1992) ......................................................................................................................8

*Morris v. Redwood Empire Bancorp*,
   128 Cal.App.4th 1305 (2005) ....................................................................................................18

*Ontiveros v. DHL Exp. (USA), Inc.*,
   164 Cal.App.4th 494 (2008) (abrogated on other grounds as recognized by *Pineal v.*
   *Neiman Marchus Group Inc.*, 238 Cal.App.4th 227 (2015)) ............................................15

*Parada v. Superior Court*,
   176 Cal.App.4th 1554 (2009) ....................................................................................................19

vi

*Pearson Dental Supplies Inc. v. Superior Court*,
   48 Cal.4th 665 (2010) ............................................................................................13, 17

*Peng v. First Republic Bank*,
   219 Cal.App.4th 1462 (2013), *as modified* (Oct. 2, 2013) .................................................10

*Pinnacle Museum Tower Ass'n v. Pinnacle Marketing*,
   55 Cal.4th 223 (2012) ..............................................................................................18

*Powers v. Dickson, Carlson & Campillo*,
   54 Cal.App.4th 1102 (1997) .......................................................................................10

*Rowe v. Exline*,
   153 Cal.App.4th 1276 (2007) ......................................................................................10

*Sanchez v. Carmax Auto Superstores Cal., LLC*,
   224 Cal.App.4th 398 (2014) .......................................................................................15

*Sanchez v. Valencia Holding Co.*,
   61 Cal.4th 899 (2015) ..............................................................................................19

*Sandquist v. Lebo Automotiv, Inc.*,
   1 Cal.5th 233, 2016 WL 4045008 ....................................................................................5

*Sonic-Calabasas A, Inc. v. Moreno*,
   57 Cal.4th 1109 (2013) ............................................................................................17

*Strotz v. Dean Witter Reynolds*,
   223 Cal.App.3d 208 (1990) (overruled on other grounds) ...............................................12

*Tiri v Lucky Chances*,
   226 Cal.App.4th 231 (2014) .........................................................................................5

*United Transp. Union v. Southern Cal. Rapid Transit Dist.*,
   7 Cal.App.4th 804 (1992) ............................................................................................9

*Valsan Partners Ltd. P'ship v. Calcor Space Facility, Inc.*,
   25 Cal.App.4th 809 (1994) .........................................................................................12

*Vianna v. Doctors' Mgmt. Co.*,
   27 Cal.App.4th 1186 (1994) .......................................................................................10

*Wagner Const. Co. v. Pacific Mechanical Corp.*,
   41 Cal.4th 19 (2007) ............................................................................................12, 13

**Federal Statutes**

9 U.S.C. § 2 ...........................................................................................................7, 8

vii

9 U.S.C. § 4 ........................................................................................................9, 12

42 U.S.C. § 2000e, *et seq*. Title VII ...........................................................................1

Code of Civil Procedure § 1283.05...........................................................................14

Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq*. ............................................... *passim*

Federal Equal Pay Act, 29 U.S.C. §§ 206, *et seq*. and § 215(a)(3).............................1

**State Statutes**

Cal. Civ. Code § 1698...........................................................................................14, 16

Cal. Civ. Proc. Code § 1281 .........................................................................................8

Cal. Civ. Proc. Code § 1281.2 .........................................................................7, 9, 12

California Arbitration Act, Cal. Code Civ. Proc. §§ 1280 *et seq*. ..................................1

California Fair Employment and Housing Act, Cal. Gov. Code § 12940, *et seq*. .........1

California Fair Pay Act, Cal. Lab. Code § 1197.5, *et seq*. .............................................1

Illinois Equal Pay Act, 820 ILCS 112/1, *et seq*. ..........................................................1

Illinois Human Rights Act, 740 ILCS 5/, *et seq*. ..........................................................1

**Rules**

Rule 11 ......................................................................................................................4, 6

Rule 24(c)....................................................................................................................16

Rule 24 (h) ..................................................................................................................15

**Other Authorities**

JAMS Employment Arbitration Rules..........................................................................4

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

Plaintiff Traci Ribeiro, an experienced attorney and law firm partner, has filed a lawsuit against her law firm, even though she knowingly agreed to binding and enforceable arbitration of the issues over which she now complains.

As a threshold matter, arbitrability itself is an issue the parties mutually designated for decision by the arbitrator, rather than by a court.  But even if the issue was for the Court, the claims asserted by Plaintiff fall squarely within the Alternative Dispute Resolution provision (the "ADR Provision"), i.e., section 10.17 of the partnership agreement Plaintiff executed (twice) after being elected to the partnership.  Specifically, all of Plaintiff's alleged claims against her partnership, Sedgwick, stem from Plaintiff's partnership compensation and the purported failure of Sedgwick's equity partners to elect her to equity partnership.  These issues are explicitly governed by the partnership agreement.[1]  Plaintiff bases her claims on, inter alia, alleged violations of the Federal Equal Pay Act, 29 U.S.C. §§ 206, *et seq*. and § 215(a)(3); and Title VII, 42 U.S.C. § 2000e, *et seq*.  Plaintiff also asserts claims pursuant to the California Fair Pay Act, Cal. Lab. Code § 1197.5, *et seq.*, Illinois Equal Pay Act, 820 ILCS 112/1, *et seq*., California Fair Employment and Housing Act, Cal. Gov. Code § 12940, *et seq*., and the Illinois Human Rights Act, 740 ILCS 5/, *et seq*.

The ADR Provision is unambiguous, mandatory, and enforceable pursuant to the California Arbitration Act, Cal. Code Civ. Proc. §§ 1280 *et seq.* (the "CAA"), and the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* (the "FAA").[2]  Furthermore, there can be no dispute that the ADR Provision encompasses the claims Plaintiff asserts in this lawsuit.  For these reasons, Plaintiff must be compelled to arbitrate her claims.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Sedgwick hired Plaintiff in January 2011     **SEALED**     based in its Chicago office.

**SEALED**

---

[1] Indeed, Plaintiff's Complaint confirms that the firm "is organized and operates pursuant to a Partnership Agreement."  (Complaint, ¶ 18.)

[2] By bringing this Motion, Sedgwick does not waive any of its substantive or procedural defenses.

1

1

**SEALED**

2
.  (Declaration of Bruce D. Celebrezze ["Celebrezze Decl."], ¶ 2.)  **SEA**

3

4

5

6
.  (*Id*.)  Generally, shortly after the election at the all-partner

7
retreat in November, the firm's General Counsel provides all newly-elected partners with a copy of the

8
partnership agreement then in effect for their review, and invites the newly-elected partners to contact

9
him with any questions pertaining to the partnership agreement.  (*Id*. ¶ 4)  Upon her partnership effective

10
date of January 1, 2012, Plaintiff was also given access to the partnership agreement on the firm's

11
intranet.  (*Id.* ¶¶ 5-6.)

12
Early in 2012, the firm held a retreat for its new partners.  On January 13, 2012, prospective

13
attendees at the retreat, including Plaintiff, received an email reminding them that the partnership

14
agreement was available for review on the intranet and would also be an agenda item at the retreat.

15
(Celebrezze Decl., ¶ 7, Exh. B.)  Thus, the new partners had the opportunity to review the partnership

16
agreement and prepare any questions for discussion at the retreat.  The partnership agreement was, in

17
fact, an agenda item at the new partner retreat.  (*Id.*)  Plaintiff attended the new partner retreat.  (*Id.*)

18
Signature pages were made available at the retreat for the new partners to sign.  (*Id.*,¶ 7.)  After having

19
many weeks to review it, and an opportunity to discuss it at the retreat with senior leaders in the firm,

20
including the General Counsel, Plaintiff signed the partnership agreement on February 7, 2012.  (*Id.,* ¶ 8,

21
Exh. C.)

22
**SEALED**

23

24

25

26

27
.

28

2

1  (*Id.*)  Plaintiff signed the amended and restated partnership agreement on December 4, 2012, several

2  weeks after the retreat, having had the benefit of the discussion at the retreat and then many weeks to

3  review the agreement.  (*Id.*, Exh. E.)[3]

4       <u>Both</u> versions of the partnership agreement Plaintiff executed contain an ADR Provision

5  governing "any disagreements in connection with any matters set forth in this Agreement."  (Celebrezze

6  Decl., Exhs. A, D.)  Further, the ADR Provision states that "[t]he Partnership and all Partners agree that

7  the ADR Process shall be the exclusive procedure for resolution of all Disputes."  (*Id.*)  Moreover,

8  neither party disputes that the Agreement provides that the arbitrator is to decide the gateway issue of

9  whether Plaintiff's claims are subject to arbitration.[4]

10       The Agreement's ADR Provision explains the arbitration process in simple terms.  (Celebrezze

11  Decl., Exh. D.)  It clearly sets forth the procedure to initiate arbitration and the process for selecting a

12  neutral arbitrator, the scope of the arbitrator's authority, and the governing procedures by which the

13  arbitration will be conducted and the award issued.  (*Id.*)  The arbitration procedure set forth in the

14  Agreement is mutual and requires both the partnership and any partner to arbitrate all disputes against

15  each other.  (*Id.*)[5]

16       On January 15, 2016, Plaintiff sent a letter to the Chair of Sedgwick claiming discrimination

17  "regarding matters related to *decisions by the partnership*."  (Emphasis added.)  (Declaration of Nick C.

18  Geannacopulos ["Geannacopulos Decl."], ¶ 2, Exh. A.)  On February 17, 2016, Plaintiff also filed an

19  administrative charge of discrimination with the Equal Employment Opportunity Commission.

20  (Complaint, ¶ 51.)  On April 8, 2016, complying with the ADR Provision's requirements, Sedgwick

21

22  [3] The November 2012 Second Amended and Restated Partnership Agreement shall be referred to herein as "the Agreement."

23  [4] Plaintiff's Complaint alleges that the delegation clause in the ADR Provision is illegal and unenforceable.  (Complaint, ¶ 67.)

24  [5]   **SEALED**

25

26

27

28

3

filed a Demand for Arbitration seeking a declaratory judgment that it neither discriminated nor retaliated against Plaintiff in setting her compensation or in determining whether she should be elected to equity partner.  (Geannacopulos Decl., ¶ 3, Exh. B.)

On April 13, 2016, Plaintiff's counsel informed defense counsel that he "acknowledge[d] that [Sedgwick] submitted a demand for arbitration related to the legal claims identified in [Plaintiff's] EEOC charge by seeking declaratory relief regarding those claims, thereby placing those claims at issue in arbitration."  (*Id.*, ¶ 4, Exh. C.)

On April 28, 2016, JAMS sent the parties written confirmation that the arbitration had commenced, and would be conducted in accordance with JAMS Employment Arbitration Rules.  (*Id.*, ¶ 5, Exh. D.)  Subsection (b) of JAMS Employment Arbitration Rule 11 expressly provides:

> (b) Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which arbitration is sought . . . shall be submitted to and ruled on by the Arbitrator.  Unless the relevant law requires otherwise, the Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.[6]

Also on April 28, 2016, Plaintiff's counsel informed defense counsel that Plaintiff was interested in discussing modifications to the arbitration process in exchange for foregoing a public filing challenging the propriety of arbitration.  (Geannacopulos Decl., ¶ 6, Exh. E.)  The parties proceeded to discuss modifications to the arbitration procedures.  (*Id.*, ¶¶ 6-7.)  At the parties' request, the arbitration was stayed until July 25, 2016, while the parties simultaneously attempted to settle the dispute and to negotiate modifications.  (*Id.*, ¶ 7.)  On July 18, 2016, Plaintiff's counsel sent Sedgwick's counsel an email listing the three primary concerns Plaintiff had regarding the arbitration procedures:  (1) the timing of the arbitration; (2) permissible discovery; and (3) the costs of the arbitration.  (Geannacopulos Decl., ¶ 11, Exh. G.)  On July 20, 2016, counsel for Sedgwick responded in an email agreeing to Plaintiff's requests that Plaintiff not share in the costs of the arbitration and further agreeing to modifications to the discovery procedures and the timing of the hearing.  (Geannacopulos Decl., ¶ 12 Exh. H.)

---

[6] JAMS Employment Arbitration Rules are available at https://www.jamsadr.com/rules.

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY ACTION
BY DEFENDANT SEDGWICK LLP

1    On July 21, 2016, counsel for Sedgwick followed up with a letter reiterating that Sedgwick was

2    agreeable to the changes sought by Plaintiff's counsel in the July 18 email.  (Geannacopulos Decl., ¶ 12

3    Exh. J.)  On July 22, 2016, Plaintiff's counsel sent a letter to Sedgwick's counsel stating that the agreed-

4    upon changes were insufficient and further asserting that the Agreement did not cover the disputes at

5    issue.  (Geannacopulos Decl., ¶ 13, Exh. I.)  After both parties participated in the arbitrator selection

6    process, JAMS assigned an arbitrator on July 29, 2016.  (Geannacopulos Decl., ¶ 19, Exh. F.)

7    Despite her express agreement to arbitrate claims arising under the partnership agreement—

8    which she executed twice—Plaintiff filed the instant action against Sedgwick in state court on July 26,

9    2016.  Sedgwick agreed to accept service effective August 3, 2016.  (*Id.,* ¶ 10.)  The case was removed

10   to this court on August 10, 2016.

11   **III.    ARGUMENT**

12        **A.    The Arbitrator Must Decide Arbitrability**

13        Under both state and federal law, the court determines the enforceability of an arbitration

14   agreement <u>unless</u> the parties agree otherwise pursuant to what is commonly referred to as a delegation

15   clause.  Accordingly, courts must defer "questions of arbitrability" to the arbitrator where the parties

16   have "clearly and unmistakably" agreed that the arbitrator must decide those issues.  *Rent -A-Center,*

17   *West, Inc., v. Jackson*, 561 U.S. 63, 68-70 (2010);[7]  *Brennan v. Opus Bank*, 796 F.3d 1125, 1131 (9th

18   Cir. 2015) (adopting rule that incorporating AAA rules that allow for arbitrator to determine arbitrability

19   is a clear and unmistakable waiver); *Sandquist v. Lebo Automotiv, Inc.,* 1 Cal.5th 233, 2016 WL

20   4045008, *7 ("as a matter of state contract law, the parties' arbitration provisions allocate the decision on

21   the availability of class arbitration to the arbitrator."); *Malone v. Superior Court*, 226 Cal.App.4th 1551,

22   n. 20 (2014) (acknowledging that the applicable JAMS rules allow arbitrator to determine arbitrability).

23   Such is exactly the case here.

24

25   _____

26   [7] Both state and federal cases are cited in this brief because state law and federal law are similar.  *See*
     *Tiri v Lucky Chances*, 226 Cal.App.4th 231, 233 (2014).  The general rule is that federal law governs

27   arbitration disputes where the dispute is covered by the FAA unless the parties have clearly and
     unmistakably designated that non-federal arbitration law applies to the arbitration issues.  *See Brennan*

28   *v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015).

5

1      The ADR Provision unambiguously provides that        **SEALED**

2

3      (Celebrezze Decl., Exh. D at 10.17(b).)        **SEALED**

4 definitively establish that it is the arbitrator who decides if the dispute is subject to arbitration.  Thus, the

5 parties have "clearly and unmistakably" agreed that the arbitrator will decide issues of arbitrability.

6 Plaintiff does not dispute that the Agreement provides that the arbitrator is required to determine the

7 arbitrability issues.  Indeed, she alleges in her Complaint that Section 10.17 of the Agreement illegally

8 confers such authority upon the arbitrator.  (Complaint, ¶ 67.)  Plaintiff's allegations are deemed

9 admissions for purposes of this Motion.  *See, e.g., American Title Ins. Co. v. Lacelaw*, 861 F.2d 224,

10 226-227 (9th Cir. 1988).

11      Furthermore, as noted above, JAMS Employment Arbitration Rule 11 expressly states that,

12 unless applicable law provides otherwise, which it does not here, questions of jurisdiction and

13 arbitrability are to be decided by the arbitrator.  *See Malone, supra,* 776 Cal.App.4th at n. 20.  Indeed, in

14 both the Ninth Circuit and in California, the incorporation of arbitration rules delegating authority to the

15 arbitrator constitutes "clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."

16 *See Brennan, supra,* at 1130, quoting from *Oracle America v. Myriad Group A.G.*, 734 F.3d 1069, 1074

17 (9th Cir. 2013).  As noted by the Ninth Circuit in *Brennan*, the rule is especially forceful where the party

18 attempting to avoid arbitration is a sophisticated party such as an attorney.  *Id.* at 1130.  Plaintiff holds

19 herself out to be just that.  Complaint at ¶¶ 11-13.  Courts in this district have consistently followed this

20 reasoning before and since *Oracle*.  See, e.g., *Zenelaj v. Handybook Inc.*, 82 F.Supp.3d 968, 972

21 (N.D.Cal. 2015) (Henderson, J.); *Galen v. Redfin Corp.,* Nos. 14-cv-05229-TEH; 14-cv-05234-TEH,

22 2015 WL 7734137 (N.D.Cal. Dec. 1, 2015) (Henderson, J.); *Kimble v. Rhodes Cool., Inc.*, No. 10-5786-

23 EMC, 2011 WL 2175249, at *2-4 (N.D.Cal. June 2, 2011) (Chen, J.) (finding that reference to the AAA

24 Rules manifests "clear and unmistakable evidence of the parties' agreement to arbitrate arbitrability");

25 *Clarium Capital Mgmt., LLC v. Choudhury*, No. 08-5157-SBA, 2009 WL 331588, at *5 (N.D.Cal. Feb.

26 11, 2009) (Armstrong, J.) ("When the arbitration agreement explicitly incorporate[s] rules that empower

27 an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence

28

of the parties' intent to delegate such issues to an arbitrator."); *Visa USA, Inc. v. Maritz, Inc.,* No 07-05585-JSW, 2008 WL 744832 (N.D.Cal. Mar. 18, 2009 (White, J.) (holding the same); *Anderson v. Pitney Bowes, Inc.*, No. 04-4808 SBA, 2005 WL 1048700, at *2-4 (N.D.Cal. May 4, 2005) (Armstrong, J.)) (same).

The only exception to the delegation rule is where the party opposing arbitration asserts that the arbitrability of the claims is "wholly groundless." *Zenelaj v. Handybook, Inc.*, 82 F.Supp.3d 968, 971 (N.D.Cal. 2015); *Qualcomm Inc. v. Nokia*, 466 F.3d 1366, 1371 (Fed. Cir. 2006) (the district court need not and should not determine whether [plaintiffs' claims] are in fact arbitrable). The inquiry is a narrow one and focuses on the reach of the arbitration clause, not on the enforceability of its terms. *Zenelaj*, *supra,* 82 F.Supp3d at 971; *Guidewire Software Inc. v. Chookaszian*, 2012 WL 5379589 at *5 (N.D.Cal. 2012). Here, the arbitration clause in the operative partnership agreement which Plaintiff signed broadly defines

## SEALED

(Celebrezze Decl., Exh. D.) In *Simula, Inc. v. Autoliv,* 175 F.3d 716 (9th Cir. 1999), the court interpreted the phrase "all disputes arising in connection with the agreement" broadly to encompass all disputes having a significant relationship to the contract. *Id.* at 720-725. Plaintiff's claims here are inextricably intertwined with the agreement to arbitrate. The gravamen of her complaint is that she, as a partner in the firm, was unfairly compensated and was not elected to the equity partnership. These are two of the most important issues under a partnership agreement — who is admitted to the partnership and how compensation of the partners is decided. (*See, e.g.,* Celebrezze Decl. ¶ 11, Exh. F).

**B.    The Court Has The Authority To Compel Arbitration.**

Even if the Court determines the question of arbitrability is for it to decide, Plaintiff should be compelled to arbitrate her claims under the Agreement she entered with all of her fellow partners at Sedgwick. Both the California and the federal arbitration acts provide that a party to an arbitration agreement may, upon refusal of the other party to arbitrate a dispute arising under the agreement, move to compel arbitration. Cal. Civ. Proc. Code § 1281.2; 9 U.S.C. § 2. Indeed, under both California and federal law, "a written agreement to submit to arbitration an existing controversy or a controversy

1    thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the

2    revocation of any contract."  Cal. Civ. Proc. Code § 1281; *see also Grafton Partners L.P.  v. Superior*

3    *Court*, 36 Cal.4th 944, 955 (2005) ("predispute arbitration agreements are specifically authorized by

4    statute").  Likewise, the FAA makes agreements to arbitrate "valid, irrevocable, and enforceable, save

5    upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

6         Importantly, both California and federal law hold a "strong policy in favor of arbitration."  *See*

7    *Moncharsh v. Heily & Blasé*, 3 Cal.4th 1, 9 (1992); *CompuCredit Corp. v. Greenwood*, 132 S.Ct. 665,

8    669 (2012) (noting that the FAA establishes "a liberal federal policy favoring arbitration agreements");

9    *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 97 (2000) ("California law,

10   like federal law, favors enforcement of valid arbitration agreements.").  Indeed, the primary purpose of

11   the FAA is to "ensure that private agreements to arbitrate are enforced according to their terms."[8]  *Stolt-*

12   *Nielsen S.A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 682 (2010).  In California, "arbitration has

13   become an accepted and favored method for resolving disputes, praised by the courts as an expeditious

14   and economical method of relieving overburdened civil calendars."  *Madden v. Kaiser Found. Hosp.,* 17

---

15   [8] That the FAA is applicable here is indisputable.  There is no doubt that the Agreement affects interstate

16   commerce, placing this dispute squarely within the purview of the FAA.  *See* 9 U.S.C. § 2 (a contract

17   "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save
     upon such grounds as exist at law or in equity for the revocation of any contract.")  The word
     "involving" in "involving commerce" is broad enough to be interpreted as "affecting commerce,"

18   "words of art that ordinarily signal the broadest permissible exercise of the Commerce Clause."  *Citizens*

19   *Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (*citing Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S.

20   265, 273-74 (1995); see also *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001).  The FAA
     applies even if the individual contract, taken alone, does not have a substantial effect on interstate

21   commerce, "if in the aggregate the economic activity in question would 'represent a general practice . . .
     subject to federal control.'"  *Citizens Bank*, 539 U.S. at 56-7.

22        In evaluating whether a contract "affects commerce," courts consider several factors including:
     (1) whether the entity is an interstate entity; (2) whether it serves out of state clients; and (3) whether the

23   equipment or supplies used come from out of state.  *Otashe Golden v. Dameron Hospital Association, et
     al.*, 2012 WL 4208779 (E.D.Cal. Sept. 19, 2012).

24        Here, Plaintiff is a partner in the Sedgwick partnership and is not an employee, but the FAA
     applies because Sedgwick provides legal services to clients across the country and, therefore, its work

25   implicates the laws of many jurisdictions throughout the United States.  Indeed, to properly service its
     clients, Sedgwick must utilize resources from outside California, and its partners, including Plaintiff,

26   frequently travel across the country to perform legal work for clients. (Celebrezze Decl. ¶ 14.)  As
     Plaintiff acknowledges in the Complaint, Sedgwick has approximately 300 attorneys working from

27   offices in many cities across seven states and the District of Columbia, as well as international offices.
     (Complaint, ¶ 18.)  Accordingly, the Agreement falls squarely within the purview of the FAA.

28

1   Cal.3d 699, 706-707 (1976) (internal citations omitted).  *See also, Moses H. Cone Memorial Hosp. v.*

2   *Mercury Construction Corp.*, 460 U.S. 1, 22 (1983) (The FAA is designed "to move the parties to an

3   arbitrable dispute out of court and into arbitration as quickly and easily as possible.").

4          As a result of this public policy, "a heavy presumption weighs the scales in favor of

5   arbitrability."  *Cione v. Foresters Equity Servs., Inc.*, 58 Cal.App.4th 625, 642 (1997).  The Supreme

6   Court has further held that courts must place arbitration agreements on an equal footing with other

7   contracts, and enforce such agreements according to their terms.  *Buckeye Check Cashing, Inc. v.*

8   *Cardegna,* 546 U.S. 440, 443 (2006) (recognizing that the FAA "embodies the national policy favoring

9   arbitration and places arbitration agreements on equal footing with all other contracts").  Any doubt

10  concerning the scope of arbitration is resolved in favor of arbitration.  *See AT&T Technologies., Inc. v.*

11  *Communications Workers of America,* 475 U.S. 643, 650 (1986) (holding that a court must defer to

12  arbitration "unless it can be said with positive assurance that the arbitration clause is not susceptible of

13  an interpretation that covers the asserted dispute," and "doubts should be resolved in favor of

14  coverage."); *Mortensen v. Bresnan Communications, LLC*, 722 F.3d 1151, 1160 (9th Cir. 2013) ("[T]he

15  FAA's purpose is to give preference (instead of mere equality) to arbitration provisions."); *United*

16  *Transp. Union v. Southern Cal. Rapid Transit Dist.*, 7 Cal.App.4th 804, 808-09 (1992) (holding "if there

17  is a rule of thumb regarding contractual arbitration, it is that such arbitration is a highly favored means

18  of dispute resolution").

19         In that regard, California courts, like federal courts, are <u>required</u> to grant motions to compel

20  arbitration where, as here, there is a valid arbitration agreement between the parties and one party

21  refuses to submit his or her claims to arbitration.  *See* Cal. Code Civ. Proc. § 1281.2 ("the court shall

22  order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to

23  arbitrate the controversy exists"); 9 U.S.C. § 4 (in deciding a motion to compel arbitration, ". . . upon

24  being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not

25  in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with

26  the terms of the agreement.").

27

28

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY ACTION
BY DEFENDANT SEDGWICK LLP

1   In order to advance the underlying purpose of the state and federal arbitration acts, "courts will

2   indulge every intendment to give effect to [arbitration] proceedings."  *Powers v. Dickson, Carlson &*

3   *Campillo*, 54 Cal.App.4th 1102, 1109 (1997); *Peng v. First Republic Bank*, 219 Cal.App.4th 1462, 1468

4   (2013), *as modified* (Oct. 2, 2013).  *See also, Keuhner v. Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir.

5   1996) (noting that the FAA "created a rule of contract construction favoring arbitration").  As a result,

6   arbitration clauses are presumed to be valid and any doubts are to be resolved in favor of the party

7   moving to compel arbitration.  *See, e.g.*, *AT&T Technologies., Inc., supra,* 475 U.S. at 650 ("doubts

8   should be resolved in favor of coverage**")**; *Bigler v. Harker School*, 213 Cal.App.4th 727, 738 (2013)

9   ("[i]n light of California's strong public policy in favor of arbitration . . . '[d]oubts as to whether an

10  arbitration clause applies to a particular dispute are to be resolved in favor of sending the parties to

11  arbitration'") (internal citations omitted); *Rowe v. Exline*, 153 Cal.App.4th 1276, 1282 (2007) ("[a]

12  strong public policy favors the arbitration of disputes, and doubts should be resolved in favor of

13  deferring to arbitration proceeding"); *Vianna v. Doctors' Mgmt. Co.*, 27 Cal.App.4th 1186, 1189 (1994)

14  (stating that California's strong presumption in favor of arbitration dictates that doubts as to arbitration

15  must be resolved in favor of coverage).  *See also Buckhorn v. St. Jude Heritage Medical Group*, 121

16  Cal.App.4th 1401, 1407 (2004); *Larkin v. Williams, Wooley, Cogswell, Nakazawa & Russell*, 76

17  Cal.App.4th 227, 230 (1999).

18       Furthermore, the party opposing arbitration has the burden of showing that an arbitration clause

19  is invalid or otherwise unenforceable.  *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-2

20  (2000) ("the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable

21  for arbitration").  *See also Buckhorn,* 121 Cal.App.4th at 1406 ("[t]he burden is on the party opposing

22  arbitration to demonstrate that an arbitration clause cannot be interpreted to require arbitration of the

23  dispute") (internal citations omitted).  *Accord:  Mission Viejo Emergency Med. Associates v. Beta*

24  *Healthcare Grp.*, 197 Cal.App.4th 1146, 1158 (2011); *Coast Plaza Doctors Hospital v. Blue Cross of*

25  *California*, 83 Cal.App.4th 677, 686-87 (2000).  Plaintiff cannot meet her burden.

26

27

28

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY ACTION
BY DEFENDANT SEDGWICK LLP

**C.    Plaintiff Agreed To Arbitrate The Claims She Asserts In This Case.**

In California, "[g]eneral principles of contract law determine whether the parties have entered into a binding agreement to arbitrate."  *Craig v. Brown & Root, Inc.,* 84 Cal.App.4th 416, 420 (2000).  The broader the scope of the arbitration clause, the greater the presumption of arbitrability.  *AT&T Technologies, Inc., supra*, 475 U.S. at 650; *see also, Fleet Tire Serv. of North Little Rock v. Oliver Rubber Co.*, 118 F.3d 619, 621 (8th Cir. 1997) ("Where a broad arbitration clause is in effect, even the question of whether the controversy relates to the agreement containing the clause is subject to arbitration.").  Here, there can be no dispute that, as a partner, Plaintiff agreed (twice) in writing to arbitrate any claims she might have against Sedgwick and agreed that arbitration is the "exclusive procedure" to resolve disputes.

The arbitration clause Plaintiff signed is very broad,                **SEALED**

(Celebrezze Decl., Exh. D.)  In addition, the Ninth Circuit has determined that the specific language at issue in the ADR Provision is broad enough to require arbitration of Plaintiff's claims.  In *Simula, Inc. v. Autoliv, Inc.,* 175 F.3d 716 (9th Cir. 1999), the court interpreted the phrase "all disputes arising *in connection* with the agreement" to encompass all disputes having a significant relationship to the contract.  *Id.* at 720-25 (emphasis added).

Plaintiff's claims here are inextricably intertwined with the Agreement.  The gravamen of her Complaint is that she was unfairly undercompensated <u>as a partner</u> and denied <u>election to equity partner status</u>.  These issues are explicitly governed by the Agreement.  Indeed, these are two extremely vital issues for any partnership – who is elected into the partnership and how they are compensated.

For example,                       **SEALED**

[9] The Agreement also specifies           **SEALED**

---

[9] Sections of the November 10, 2012 Second Amended and Restated Partnership Agreement referred to herein are attached as Exhibit F to the Declaration of Bruce D. Celebrezze.

**SEALED**

The ADR provision that Plaintiff twice agreed to requires arbitration **SEALED**

to resolve her claims as they are related to partnership status and compensation – matters directly connected to the Agreement.  *Cione v. Foresters Equity Services, Inc.*, 58 Cal.App.4th 625, 642 (1997) ("arbitration should be granted 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'") (internal citations omitted); *AT&T Technologies, Inc., supra,* 475 U.S. at 650 (same).[10]

### D.   The Agreement Is Enforceable.

A written arbitration agreement is enforceable and requires covered claims to be arbitrated unless the right to compel arbitration has been waived or grounds exist for the revocation of the agreement. Cal. Civ. Proc. Code § 1281.2; 9 U.S.C. § 4.  In fact, denial of a motion to compel arbitration on grounds other than those enumerated in Cal. Civ. Proc. Code section 1281.2 is reversible error.  *See Valsan Partners Ltd. P'ship v. Calcor Space Facility, Inc.*, 25 Cal.App.4th 809, 817 (1994) (reversing trial court's order denying arbitration).

### 1.   Sedgwick has not waived the right to compel arbitration.

There is no basis for a claim of waiver.  Sedgwick has not "substantially invoked" the litigation machinery to warrant a finding of waiver.  *Wagner Const. Co. v. Pacific Mechanical Corp.*, 41 Cal.4th 19, 30-31 (2007).  Indeed, Sedgwick is seeking to compel arbitration of Plaintiff's claims at the earliest possible opportunity (i.e., within weeks of being served with Plaintiff's lawsuit) before it has conducted any discovery.  Moreover, given the strong public policy favoring arbitration agreements, "waivers are not lightly to be inferred and the party seeking to establish a waiver bears a heavy burden of proof."

---

[10] Any argument that there was no agreement to arbitrate because there was no consideration is without merit.  The consideration for Plaintiff's agreement to arbitrate was *Sedgwick's* agreement to arbitrate as the provision is entirely mutual.  (Celebrezze Decl., Exh. D.)  That is adequate consideration under settled law.  *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002) (employer's "promise to be bound by the arbitration process itself serves as adequate consideration"); *Armendariz*, 24 Cal.4th at 118; *Strotz v. Dean Witter Reynolds,* 223 Cal.App.3d 208, 216 (1990) ("the parties' mutual promises . . . to arbitrate their disputes provide consideration for each other.") (overruled on other grounds).

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY ACTION
BY DEFENDANT SEDGWICK LLP

1   *Wager Const. Co.*, 41 Cal.4th at 31.  Plaintiff has refused to arbitrate her claims, and Sedgwick has

2   expressed no indication that it is waiving the right to arbitrate those claims.[11]

3   ### 2.   No grounds exist to revoke the ADR Provision.

4   The ADR Provision cannot be revoked if it provides basic procedural and remedial protections

5   such that Plaintiff may effectively pursue her statutory rights.  *Armendariz v. Foundation Health*

6   *Psychcare Svcs.*, 24 Cal.4th 83 (2000), has become the standard by which arbitration agreements in the

7   employment context are measured under California law.  Here, plaintiff is and remains a partner in a law

8   firm.  She is not an employee and, as such, it is doubtful *Armendariz* applies.  See *Armendariz* at 103, n

9   8 ("mandatory employment arbitration agreement"); *Pearson Dental Supplies Inc. v. Superior Court*, 48

10  Cal.4th 665, 677 (2010) (a "mandatory employment arbitration agreement" is one that "an employer

11  imposes on the employee as a condition of employment").

12  However, even if *Armendariz* were to apply, mandatory arbitration of claims is valid and

13  enforceable provided the arbitration agreement meets the following minimum procedural requirements:

14  "(1) provides for neutral arbitrators; (2) provides for more than minimal discovery; (3) requires a written

15  award; (4) provides for all types of relief that would otherwise be available in court; and (5) does not

16  require employees to pay either unreasonable costs or any arbitrators' fees as a condition of access to the

17  arbitration forum."  *Armendariz, supra,* 24 Cal.4th at 102.  As discussed, below, the Agreement satisfies

18  all five of the *Armendariz* requirements.

19  ### a.   Neutral Arbitrator

20  The ADR Provision provides for a neutral arbitrator to be agreed to by the parties and provides a

21  process for selecting a neutral arbitrator if the parties are unable to agree.  (Celebrezze Decl., Exh. D.)

22  The Agreement also specifies that the arbitrator must not have any actual or perceived conflict of

23  interest with the parties.  *Id.* Thus, this criterion is met.

---

[11] In fact, it could be argued that Plaintiff has waived any challenge to the arbitral forum by participating
in the arbitration procedures relative to Sedgwick's April 8 Arbitration Demand for declaratory relief
concerning Plaintiff's claims.  Plaintiff's counsel "acknowledged that [Sedgwick] submitted a demand
for arbitration relating to the legal claims identified in [Plaintiff's] EEOC charge by seeking declaratory
relief regarding those claims, *thereby placing those claims at issue in arbitration.*"  (Geannacopulos
Decl., Exh. C, emphasis added.)  She also participated in the JAMS process for selecting arbitrators and
requested Sedgwick pay her portion of the JAMS fees, which Sedgwick has done.  (*Id.* at ¶¶ 9, 14)

13

b.     **Adequate Discovery**

The ADR Provision permits                    **SEALED**

. (Celebrezze Decl., Exh.

D.)  As explained below, even with this limitation, the ADR provision is enforceable.  Further, prior to

filing this lawsuit, while discussing arbitration terms, Plaintiff requested a modification to the arbitration

procedures to allow enhanced discovery.  Sedgwick agreed.  (Geannacopulos Decl., ¶¶ 6, 8; Exh. E.)  It

is black letter law that parties to a contract are free to modify it and it is their consent that controls the

contract terms.  *See* Cal. Civ. Code § 1698.  Thus, the discovery procedures, particularly when

considered in light of the modifications to which Sedgwick agreed at Plaintiff's request, are enforceable.

Any argument that the discovery limitation renders the ADR Provision unconscionable is

without merit.  Importantly, *Armendariz* does not mandate the full complement of available discovery

procedures.  Instead, the California Supreme Court noted that parties are "permitted to agree to

something less than the full panoply of discovery provided in Code of Civil Procedure section 1283.05."

*Armendariz,* 24 Cal.4th at 106.  *See also, Dotson v. Amgen, Inc.,* 181 Cal.App.4th 975, 983-85 (2010)

(discovery limitations are an integral and permissible part of the arbitration process; "adequate"

discovery does not mean "unfettered" discovery).  Rather, arbitration agreements provide adequate

discovery where the parties are entitled to discovery sufficient to arbitrate their statutory claims,

including access to essential documents and witnesses, as determined by the arbitrator.  *Armendariz*, 24

Cal.4th at 106.  In fact, the *Armendariz* court recognized that "a limitation on discovery is one important

component of the 'simplicity, informality, and expedition of arbitration.'"  *Id.* at 106 n.11 (quoting

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991)).

Courts have invalidated discovery limitations as unconscionable only where they are extreme

and one-sided.  E.g*., Ferguson v. Countrywide Credit Indus.*, 298 F.3d 778, 786-787 (9th Cir. 2002)

(arbitration agreement restricted discovery to three depositions, not counting experts, and 30 requests,

and also stated that the deposition of a corporate officer could cover no more than four designated

subjects without such a limitation on other depositions); *Openshaw v. FedEx Ground Package Sys., Inc.*,

731 F.Supp.2d 987, 995 (C.D.Cal. 2010) (agreement completely foreclosed discovery except on

1   damages); *Ontiveros v. DHL Exp. (USA), Inc.*, 164 Cal.App.4th 494, 511-14 (2008) (abrogated on other

2   grounds as recognized by *Pineal v. Neiman Marchus Group Inc*., 238 Cal.App.4th 227

3   (2015))(agreement limited discovery to one deposition and requests for production of documents,

4   subject to the arbitrator's allowance of more discovery "upon a showing of substantial need").

5   However, courts have upheld less severe discovery limits.  *See, e.g., Grabowski v. Robinson*, 817

6   F.Supp.2d 1159, 1175 (S.D.Cal. 2011) (agreement "does not limit the employee to only one deposition,

7   and . . . names the Arbitrator as the decision maker on whether discovery should be granted"); *Sanchez

8   v. Carmax Auto Superstores Cal., LLC*, 224 Cal.App.4th 398, 478-79 (2014) (discovery restricted to

9   relevant documents, personnel file, 20 interrogatories, and three depositions, with additional discovery

10  permitted upon a showing of "substantial need," where plaintiff "does not make any showing that he

11  could not maintain his claim without more discovery."); *Mercuro v. Sup. Ct.,* 96 Cal.App.4th 167, 182-

12  83 (2002) (discovery limited to three depositions and 30 discovery requests, with additional discovery

13  "upon a showing of good cause," but with a presumption against increasing the number of requests,

14  where plaintiff had no evidence that the restrictions "would necessarily prevent [him] from vindicating

15  his statutory rights").

16  The ADR Provision provides substantially greater discovery than the agreements held

17  unconscionable in the cases discussed above,                                   **SEALED**

18                               .  Plaintiff has no evidence that,                **SEALED**

19                                                                   will add anything

20  further to her ability to vindicate her rights.  Nevertheless, this issue is moot as Sedgwick has already

21  agreed that "[e]ach side may propound one set of 30 interrogatories, inclusive of subparts, to each

22  other."  (Geannacopulos Decl., ¶¶ 6, 8; Exh. E).

23           **c.**        **Written Award**

24  The ADR Provision provides that "                            **SEALED**

25                                   ."  (Celebrezze Decl., Exh. D.)  Thus, the Agreement

26  satisfies this criterion.  (*See also*, JAMS Employment Arbitration Rule 24 (h):  "The Award shall consist

27  of a written statement signed by the Arbitrator regarding the disposition of each claim and the relief, if

28

any, as to each claim.  The award shall also contain a concise written statement of the reasons for the Award, stating the essential findings and conclusions on which the Award is based.").

### d.     No Limitation on Remedies

The ADR Provision provides that                    **SEALED**

, the arbitrator may grant any remedy or relief that is just and equitable and within the scope of the ADR Provision.  (JAMS Employment Arbitration Rule 24(c).)

### e.     Unreasonable Costs

While the cost allocation is contrary to *Armendariz's* prohibition against requiring the respondent to bear any type of expense he or she would not have to bear in court, Sedgwick agreed, in writing, before Plaintiff filed suit, to pay all costs associated with the arbitration.  (Celebrezze Decl., Exh. D.)

Plaintiff may argue that such an agreement, made after the Agreement was entered into, is not valid.  Plaintiff is wrong.  Arbitration is a creature of contract and contracts may be modified by the parties.  Cal. Civ. Code § 1698.[12]  Further, this is not a case where Sedgwick has unilaterally imposed an after-the-fact contract modification on Plaintiff.  Rather, Plaintiff offered the modification and Sedgwick accepted before the arbitration stay expired on July 25, 2016. (Geannacopulos Decl., ¶¶ 6-8, Exh. E.)  Thus, this issue is moot.[13]  See, e.g., *Muriithi v. Shuttle Express Inc.,* 712 F.3d 173, 182-83 n. 10 (4th

---

[12] Pursuant to California contract law, the elements for a viable contract are "(1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration." *United States ex rel. Oliver v. Parsons Co.,* 195 F.3d 457, 462 (9th Cir. 1999) (citing Cal. Civ. Code § 1550; *Marshall & Co. v. Weisel,* 242 Cal.App.2d 191, 196 (1966)).

[13] Plaintiff may attempt to rely on *Martinez v. Master Protection Corp.,* 118 Cal.App.4th 107 (2004), to argue that Sedgwick's agreement to cover all arbitration costs does not cure the unenforceable provision. Such reliance would be misplaced.  In *Martinez,* an employer offered to amend an impermissible arbitration cost provision after the employee was terminated.  The offer was in the form of an unverified statement by defense counsel in the defendant's motion for summary judgment.  Further, the arbitration agreement in *Martinez* was fully integrated and could therefore only be modified by a writing signed by the parties expressing their intention to modify the agreement. The court held that the employer's "after-the-fact expression of willingness to amend the arbitration agreement to conform to law is ineffective . . . '[n]o existing rule of contract law permits a party to resuscitate a legally defective contract merely by offering to change it.'" *Id.*, 118 Cal.App.4th at 116 (*citing Armendariz,* 24 Cal.4th at 125*)*.  Here, Plaintiff waived any challenge to this mutual modification because Plaintiff offered the modification and Sedgwick accepted it – before the arbitration of Sedgwick's Demand commenced.

Cir. 2013) (defendant's offer to pay all arbitration costs before district court rules on enforceability of arbitration clause moots claim of prohibitive costs in arbitration process); *EEOC v. Woodman of Life Ins. Soc.*, 479 F.3d 561, 566-67 (8th Cir. 2007) (same); *Carter v. Countrywide Credit*, 362 F.3d 294, 300 n.3 (5th Cir. 2004) (same).  Moreover as noted above, *Armendariz* only applies in the context of "mandatory <u>employment</u> arbitration agreements" (emphasis added) whereas, here, Plaintiff is a law firm partner.  It is well settled that both California law and the FAA require courts to interpret fee provisions in a manner so as to render them lawful.  *Pearson*, 48 Cal.4th at 682.  Thus, even if this Court were to conclude that *Armendariz* is applicable, the Agreement, and especially the ADR Provision, should be enforced.

### 3. <u>The Agreement is not unconscionable.</u>

Plaintiff is unable to show that the ADR Provision is unconscionable.  *Arguelles-Romero v. Superior Court*, 184 Cal.App.4th 825, 836 (2010) ("The party opposing arbitration has the burden of proving that the arbitration provision is unconscionable.").

For the ADR Provision to be rendered unenforceable, it must be *both* procedurally *and* substantively unconscionable.  *Armendariz*, 24 Cal.4th at 114; *Arguelles-Romero*, 184 Cal.App.4th at 837.  The former focuses on the factors of "oppression" and "surprise" and the latter on whether the agreement is "overly harsh" or "one-sided."  *Id.*  If one of these elements is not present, the arbitration agreement must be enforced.  *Id.*  Moreover, these two elements are considered on a sliding scale. *McManus v. CIBS World Mkt. Corp.*, 109 Cal.App.4th 76, 91 (2003) ("a sliding scale is invoked whereby the more procedurally oppressive the arbitration clause is, the less evidence of substantive unconscionability is required to warrant the conclusion that the agreements to arbitrate are unenforceable.").

### a. **The ADR Provision is not substantively unconscionable**.

To find an agreement substantively unconscionable, the terms of the agreement must be "so one-sided as to shock the conscience."  *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal.4th 1109, 1145 (2013).  The most important consideration is whether mutuality exists.  *See Armendariz*, 24 Cal.4th at 117, (holding that arbitration agreements must contain a "modicum of bilaterality").

Here, the obligation to arbitrate is mutual and bilateral.  The ADR Provision expressly provides:

"

**SEALED**

."  (Celebrezze Decl., Exh. D.)  Thus, by the Agreement's terms, a partner has the same right to compel arbitration regarding a partnership dispute with Sedgwick as Sedgwick has to compel arbitration against the partner, and both will be subject to the same arbitration procedures as set forth in the ADR Provision.  Accordingly, the provision is not substantively unconscionable.

### b.    The ADR Provision is not procedurally unconscionable.

The absence of substantive unconscionability alone compels enforcement of the ADR Provision. Regardless, even if the Court were to find evidence of substantive unconscionability, Plaintiff cannot show that the provision is procedurally unconscionable.

Under California law, a court may find that an agreement is procedurally unconscionable only when "oppression or surprise [exist] due to unequal bargaining power."  *Pinnacle Museum Tower Ass'n v. Pinnacle Marketing*, 55 Cal.4th 223, 247 (2012) (the oppression component arises from an absence of a "meaningful choice" on the part of the weaker party); *Morris v. Redwood Empire Bancorp*, 128 Cal.App.4th 1305, 1319 (2005).  Thus, the existence of a meaningful choice to modify or reject an arbitration agreement is fundamentally incompatible and precludes a finding of procedural unconscionability.  *See id.* at 1320; *Smith v. Ford Motor Co.*, 462 Fed.Appx. 660, 663, 664 (9th Cir. 2011).  Here, there is absolutely no indication that Plaintiff was subjected to oppressive tactics to force her to execute the Agreement.  *Contra Mercuro v. Sup. Ct.*, 96 Cal.App.4th 167, 174-75 (2002) (holding that an arbitration agreement was procedurally unconscionable based on "oppressive tactics" where, in response to an employee refusing to sign an arbitration agreement, the employer, among other things, told the employee "he 'did not have the option of signing …' if he wanted 'to make a living at [the Employer],'" and if he did not sign he would be "made to 'pay big time,'" and would have "difficulty in obtaining other employment").)

This is not an employer-employee situation. Rather, it is a group of law firm partners who voluntarily agreed to enter into a partnership agreement with one another to engage in the practice of law together. In marked contrast to the cases cited above, Plaintiff had ample time to review and consider the partnership agreement before signing it. Plaintiff was elected to partnership effective January 1, 2012. Early in 2012, the firm held a retreat for new partners. On January 13, 2012, prospective attendees at the retreat, including Plaintiff, received an email reminding them that the partnership agreement was available for review on the intranet and would also be an agenda item at the retreat. Thus, the new partners, all experienced attorneys, had the opportunity to review the agreement and prepare questions for discussion at the retreat. (Celebrezze Decl., ¶ 7, Exh. B.) Moreover, Plaintiff could have chosen not to become a partner and still continued her employment with the firm. *See Davis v. O'Melveny*, 485 F.3d 1066, 1073 (9th Cir. 2007) (abrogated in part on other grounds by *AT&T Mobility Co. v. Concepcion*, 563 U.S. 333 (2011)), as recognized in *Ferguson v. Corinthian Colls, Inc*. 733 F.3d 928, 933 (9th Cir. 2013) (recognizing where individual can keep her position procedural unconscionability is limited).

Signature pages were made available at the retreat for the new partners to sign. (Celebrezze Decl., ¶ 8.) Plaintiff signed the agreement at the retreat on February 7, 2012. (*Id.*, Exh. C.) The partnership agreement was amended and restated in November 2012, after a discussion was held at the firm's annual all-partner retreat. Plaintiff signed the amended and restated agreement on December 4, 2012. (*Id.* ¶¶ 9, 10, Exh. E.) Both versions of the partnership agreement that Plaintiff signed contain an ADR Provision

**SEALED**

" (*Id.*, Exhs. A, D.)[14]

Significantly, this is an agreement among extremely competent attorneys, governing a partnership relationship which entails fiduciary duties and provides that Plaintiff is a partner with voting

---

[14] Any argument that the ADR Provision is procedurally unconscionable because it does not stand out from the rest of the Agreement and is in the same type and size font would be unavailing. *Sanchez v. Valencia Holding Co.*, 61 Cal.4th 899, 914 (2015) (holding that a party has "no obligation to highlight [an] arbitration clause [in] its contract"); *Parada v. Superior Court*, 176 Cal.App.4th 1554, 1571 (2009) (arbitration provisions are 'not hidden" because they were "in the same typeface and font size as the rest of the [agreement's] provisions"); *Monex Deposit Co. v. Gilliam*, 671 F.Supp.2d 1137, 1143-44 (C.D.Cal. 2009) (same); *Gilbert v. Bank of America*, 2015 WL 1738017, at *5 (N.D.Cal. 2015) (same).

1    **SEALED**                  . Plaintiff, a seasoned litigator and counselor, who has appeared

2    in multiple fora and jurisdictions, executed the agreement twice. Thus, Plaintiff cannot credibly argue

3    that she should be excused from complying with the ADR Provision because she now claims she did not

4    read it, or because she only read parts of the partnership agreement before she signed it. *See Mohamed*

5    *v. Uber Techs., Inc.,* 109 F.Supp.3d 1185, 1198 (N.D.Cal. 2015) ("it is essentially irrelevant whether a

6    party actually reads the contract or not, so long as the individual had a legitimate *opportunity* to review

7    it" (emphasis in original); *Marin Storage & Trucking, Inc.,* 89 Cal.App.4th 1042, 1049 (2010) ("A party

8    cannot avoid the terms of a contract on the ground that he or she failed to read it before signing");

9    *Bolanos v. Khalatian*, 231 Cal.App.3d 1586, 1590 (1991) (finding a party "with the capacity of reading

10   and understanding an instrument" may not avoid terms of a contract "on the ground he failed to read it

11   before signing").

12       Moreover, Plaintiff's legal acumen and extensive experience serves to mitigate any degree of

13   oppression she may assert should the Agreement be deemed an adhesion contract. *See Dotson v.*

14   *Amgen, Inc.,* 181 Cal.App.4th 975, 981 (2010) (holding that where plaintiff was a "highly educated

15   attorney . . . under the facts of this case, procedural unconscionability is present only because the offer

16   was presented on a take-it-or-leave-it basis . . . .  In such circumstances, the courts have found a

17   minimum degree of procedural unconscionability.").  (*See* Celebrezze Decl., Exh. G.)  In short, there

18   was no surprise or oppression associated with Plaintiff's execution of the partnership agreement—either

19   in February 2012 or again in December 2012—and the ADR provision, therefore, is not procedurally

20   unconscionable.

21       **c.    Any unconscionable terms can be severed and the remainder of the**
         **ADR Provision can be enforced**.

22

23       To the extent the Court finds any particular term unconscionable, the Court may sever that term

24   and enforce the rest of the provision.  *Armendariz*, 24 Cal.4th at 121-22 (explaining that a trial court

25   may, when faced with an unconscionable contract provision, "enforce the remainder of the contract

26   without the unconscionable clause.").  Indeed, the Court should refuse to enforce an entire agreement

27   only when the agreement is "permeated by unconscionability." *Armendariz,* 24 Cal.4th at 122.  That is

28

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY ACTION
BY DEFENDANT SEDGWICK LLP

1  not the case here.  The ADR Provision mutually binds the parties to arbitration and establishes

2  procedural safeguards, some of which were mutually modified, such as the cost provision, pursuant to

3  Plaintiff's request before the arbitration of Sedgwick's Demand commenced.  Therefore, the Court may

4  and should sever any clause or provision it finds inappropriate and otherwise enforce the remainder of

5  the ADR Provision.

6  **IV.    CONCLUSION**

7         For the foregoing reasons, defendant Sedgwick LLP respectfully requests that the Court order

8  partner Traci Ribeiro to comply with the ADR Provision of the partnership agreement she executed and

9  arbitrate her claims based on allegedly discriminatory compensation and failure to be elected to equity

10  partnership — issues falling squarely within the scope of the ADR Provision because they are directly

11  governed by the Agreement.  Sedgwick further requests that the Court stay the instant action pending

12  completion of the arbitration.

13  DATED: August  23, 2016                    SEYFARTH SHAW LLP

14

15                                            By:  /s/ *Nick C. Geannacopulos*

16                                                 Nick C. Geannacopulos
                                                   G. Daniel Newland

17                                                 Emily Barker
                                               Attorneys for Defendant

18                                             SEDGWICK LLP

19  28557648v.3

20

21

22

23

24

25

26

27

28

21