1   SHARON R. VINICK (State Bar No. 129914)
    LEVY VINICK BURRELL HYAMS LLP
2   180 Grand Avenue, Suite 1300                    REDACTED VERSION
3   Oakland, California 94612                       OF DOCUMENT SOUGHT
    Direct: (510) 318-7702                          TO BE SEALED
4   Main: (510) 318-7700
    Fax: (510) 318-7701
5   sharon@levyvinick.com

6   J. BRYAN WOOD (Bar No. IL6270845)
7   THE WOOD LAW OFFICE, LLC
    303 W. Madison St., Suite 2650
8   Chicago, Illinois 60606
    Main: (312) 554-8600
9   Fax: (312) 577-0749
    Admitted to Practice *Pro Hac Vice*
10  bryan@jbryanwoodlaw.com

11  Attorneys for Plaintiff Traci Ribeiro

12

13              UNITED STATES DISTRICT COURT

14             NORTHERN DISTRICT OF CALIFORNIA

15                 SAN FRANCISCO DIVISION

16

17                                      Case No. 3:16-cv-04507-WHA

18  TRACI RIBEIRO, on behalf of herself and  **PLAINTIFF'S OPPOSITION TO**
19  all others similarly situated,           **DEFENDANT SEDGWICK LLP'S**
                                             **MOTION TO COMPEL ARBITRATION**
20              PLAINTIFF,                    **AND STAY PROCEEDINGS**
    v.
21                                           Date:        October 13, 2016
    SEDGWICK LLP,                            Time:        8:00 am
22                                           Courtroom:   8, 19th Floor
              DEFENDANT.                     Judge:       The Hon. William Alsup
23

24                                           Trial Date:  N/A
                                             Action Filed: 07/26/16
25

26

27

28

## TABLE OF CONTENTS

I.   INTRODUCTION .................................................................................. 1

II.  PROCEDURAL AND FACTUAL BACKGROUND................................. 2

III. ARGUMENT ........................................................................................ 6

  A.  In Arguing That This Court Must Honor Sedgwick's After-The-Fact
      Delegation Clause, Sedgwick Puts The Cart Before The Horse..................... 6

  B.  SEALED                                            Does Not Create An
      Enforceable Agreement To Arbitrate Ribeiro's Statutory Employment
      Claims. ....................................................................................... 8

      1.  Defendant's Claim That *Armendariz* Does Not Apply To Plaintiff's
          Statutory Discrimination And Retaliation Claims Is Erroneous. .......... 8

      2.  SEALED          Is A Procedurally Unconscionable Contract
          Of Adhesion. ......................................................................... 10

      3.  SEALED          Is Substantively Unconscionable Because It
          Precludes Effective Vindication Of Ribeiro's Statutory
          Employment Claims. ................................................................ 13

          a.  SEALED            Unlawfully Shortens Limitations Periods. ...... 14

          b.  SEALED            Does Not Provide An Adequate Tribunal. ...... 14

          c.  SEALED            Limits Important Discovery Tools. ................ 16

          d.  SEALED            Unlawfully Imposes Costs On Ribeiro. .......... 18

          e.  Sedgwick Retains The Sole Right To Modify
              SEALED            .................................................... 19

      4.  SEALED          Is Not Salvageable And Cannot Be Enforced. ............. 20

  C.  If SEALED        Is Enforceable, It Does Not Encompass
      The Dispute At Issue Over Ribeiro's Statutory Discrimination And
      Retaliation Claims. ..................................................................... 21

      1.  SEALED          Is Limited To Matters Set Forth In The
          Partnership Agreement, Which Does Not Address
          Discrimination Or Retaliation. ..................................................... 21

      2.  Ribeiro's Gender Discrimination And Retaliation Claims
          Arise From Legal Claims Addressed In A Separate Contract,
          The Partner Handbook. .............................................................. 23

IV.  CONCLUSION................................................................................. 25

i

1

<u>TABLE OF AUTHORITIES</u>

2

**State Court Cases**

3

*Armendariz v. Foundation Health Psychcare Services, Inc.,*
4      24 Cal. 4th 83 (2000) ........................................................................ passim

5

*Dotson v. Amgen, Inc.,*
6      181 Cal. App. 4th 975 (2010) ............................................................ 12

7 *Fitz v. NCR Corp.,*
     118 Cal. App. 4th 702 (2004) ........................................................... 17

8

*Guz v. Bechtel Nat'l Inc.,*
9      24 Cal. 4th 317 (2000) ..................................................................... 24

10

*Hillsman v. Sutter Comm. Hosp.,*
11      153 Cal. App. 3d 743 (1984) ............................................................ 24

12 *Kinney v. United Healthcare Servs.,*
     70 Cal. App. 4th 1322 (Cal. App. 4th Dist. 1999) ........................... 17

13

14 *Little v. Auto Stiegler, Inc.*
     29 Cal. 4th 1064 (2003)............................................................... 10, 13

15

*Martinez v. Fire Master Protection Corp.,*
16      118 Cal. App. 4th 108, (Cal. App. 2d Dist. 2004) ...................... 14, 20

17

*Nyulassy v. Lockheed Martin Corp.,*
18      120 Cal. App. 4th 1267 (2004) ......................................................... 12

19

*Ontiveros v. DHL Express (USA), Inc.,*
20      164 Cal. App. 4th 494 (Cal. App. 1st Dist. 2008) ........................... 16

21 *Sandquist v. Levo Auto.,*
     No. S220812, 2016 Cal. LEXIS 6246,
22      (Cal. July 28, 2016)....................................................................*passim*

23

*Sonic-Calabasas A, Inc., v. Morena,*
24      57 Cal. 4th 1109 (2013) ................................................................... 18

25

*Stirlen v. Supercuts, Inc.,*
26      51 Cal. App. 4th 1519 (1997) ........................................................ 8, 13

27 *//*

28

ii

*Szetela v. Discover Bank,*
    97 Cal. App. 4th 1094 (2002) .................................................................. 11

*Victoria v. Superior Court,*
    40 Cal. 3d 734 (Cal. 1985)...................................................................... 21

**Federal Court Cases**

*Alexander v. Gardner-Denver Co.,*
    415 U.S. 36 (1974)................................................................................. 15

*Assaad v. Am. Nat'l Ins. Co.,*
    No. C 10-03712 WHA, 2010 U.S. Dist. LEXIS 138501
    (N.D. Cal. Dec. 23, 2010) ................................................................ *passim*

*AT&T Mobility II v. Pestano,*
    No. C 07-05463 WHA, 2008 U.S. Dist. LEXIS 23135
    (N.D. Cal. Mar. 7, 2008) ....................................................................... 10

*Circuit City Stores v. Adams,*
    279 F.3d 889 (9th Cir. 2002) ................................................................. 14

*Clackamas Gastroenterology Assocs., P.C. v. Wells,*
    538 U.S. 440 (2003)................................................................................. 9

*Davis v. O'Melveny & Myers,*
    485 F.3d 1066 (9th Cir. 2007) ........................................................ *passim*

*Ellis v. U.S. Security Associates,*
    224 Cal. App. 4th 1213 (2014) .............................................. 14, 15, 20

*Goodrich Cargo Sys. v. Aero Union Corp.,*
    No. C06-06226. 2006 U.S. Dist. LEXIS 93680
    (N.D. Cal. Dec. 14, 2006) ..................................................................... 24

*Ingle v. Circuit City Stores, Inc.,*
    328 F.3d 1165 (9th Cir. 2003) ..................................................... 8, 19, 20

*Int'l Ambassador Programs v. Archexpo,*
    68 F.3d 337 (9th Cir. 1995) .................................................................. 24

*Lifescan, Inc. v. Premier Diabetic Servs.,*
    363 F.3d 1010 (9th Cir. 2004) ................................................................ 6

*Macias v. Excel Bldg. Servs. LLC,*
    767 F. Supp. 2d 1002 (N.D. Cal. 2011) ........................................ passim

iii

*Mohamed v. Uber Techs.*,
    Nos. 15-16178, 15-16181, 15-16250, 2016 U.S. App. LEXIS 16413
    (9th Cir. Sep. 7, 2016).................................................................................... 7

*Nagrampa v. MailCoups, Inc.*,
    469 F.3d 1257 (9th Cir. 2006) ........................................................... passim

*Panepucci v. Honigman Miller Schwartz & Cohn, LLP*
    408 F. Supp. 2d 374 (E.D. Mich. 2005)............................................... 9

*Pokorny v. Quixtar, Inc.*,
    601 F.3d 987 (9th Cir. 2010) .............................................................. 12

*Raymundo v. ACS State Local Solutions, Inc.*,
    No. 13-cv-0042-WHA, 2013 U.S. Dist. LEXIS 40141
    (N.D. Cal. May 16, 2013) .................................................................. 12

*Rosenblatt v. Bivona & Cohen, P.C.*
    969 F. Supp. 207 (S.D.N.Y. 1997) .................................................... 9

*Strother v. S. Cal. Permanente Med. Grp.*,
    79 F.3d 859 (9th Cir. 1996) ............................................................... 9

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*,
    925 F.2d 1136 (9th Cir. 1991) ...................................................... 7, 25

*United Steelworkers of America v. Warrior & Gulf Nav. Co.*,
    363 U.S. 574 (1960)........................................................................... 6

**State Statutes, Codes**

California Civil Code Annotated
    Section 1670.5(a) ............................................................................... 8

California Government Code
    Section 12965(a) ("FEHA") .................................................... 9, 15, 20
    Section 12965(c ) ("FEHA") ........................................................... 15

**Other State Statutes, Codes**

Illinois Compiled Statutes
    775 Ill. Comp. Stat. 5/8A-104 ("Illinois Human Rights Act") ............... 15

//

//

PLAINTIFF'S OPPOSITION TO DEFENDANT SEDGWICK LLP'S MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDINGS - Case No. 3:16-04507 WHA

**Federal Statutes, Codes**

9 United States Code
  Section 4 ("Federal Arbitration Act")............................................................................ 7

42 United States Code
  Section 2000e-(5)(g) ("Civil Rights Act, Title VII").................................. 9, 15, 20
  Section 2000e-(1)(n) ................................................................................ 9, 15, 20
  Section 1981a.......................................................................................................... 15

PLAINTIFF'S OPPOSITION TO DEFENDANT SEDGWICK LLP'S MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDINGS - Case No. 3:16-04507 WHA

1    **I.      INTRODUCTION**

2           Plaintiff Traci Ribeiro should be allowed to pursue her statutory employment

3    discrimination and retaliation claims in this Court.  Defendant Sedgwick LLP's motion to

4    compel arbitration seeks to enforce an arbitration provision in its Partnership Agreement that is

5    procedurally and substantively unconscionable.  The arbitration provision denies Ribeiro an

6    effective forum to pursue her statutory employment discrimination and retaliation claims.

7           Contrary to Sedgwick's argument, this Court must first analyze whether the arbitration

8    provision *and* delegation clause in the Partnership Agreement are properly formed contracts

9    under California law.  They are not.  Sedgwick presented Ribeiro with the arbitration provision

10   and the delegation clause on a "take it or leave it" basis.  Sedgwick's failure to provide Ribeiro

11   with any opportunity to negotiate makes the arbitration provision and delegation clause a

12   procedurally unconscionable contract of adhesion.  Ribeiro – like any employee – was faced with

13   the choice of continuing her employment with the arbitration provision and delegation clause in

14   place or quitting and forgoing compensation for work she had already performed.  Accordingly,

15   the arbitration provision and delegation clause are procedurally unconscionable.

16          Sedgwick's arbitration provision is also substantively unconscionable.  Sedgwick's

17   arbitration provision undermines enforcement of state and federal civil rights laws by: (i)

18   unlawfully shortening the applicable statute of limitations period for claims; (ii) allowing

19   insufficient time for development and hearing of evidence on those claims; (iii) limiting

20   discovery available to Ribeiro; and (iv) requiring Ribeiro to pay costs she would not bear in

21   Court or face immediate, irreversible default judgment against her in arbitration.

22          In sum, substantive and procedural unconscionability pervade the arbitration provision.

23   Sedgwick claims the parties agreed to modify the Partnership Agreement's arbitration provision

24   to eliminate unconscionable provisions.  The facts show otherwise.  Moreover, under California

25   law Ribeiro is not required to accept Sedgwick's proposed modifications, particularly because

26   they were not approved in the manner the Partnership Agreement requires.  Accordingly, the

27   Court should deny Sedgwick's motion.

28

**PLAINTIFF'S OPPOSITION TO DEFENDANT SEDGWICK LLP'S MOTION TO COMPEL
ARBITRATION AND STAY PROCEEDINGS – Case No. 3:16-04507 WHA**

Even if not procedurally and substantively unconscionable, Sedgwick's arbitration provision does not apply to Ribeiro's statutory employment discrimination and retaliation claims. By its terms, the arbitration provision only applies to disputes over matters set forth in the Partnership Agreement, which does not address discrimination, retaliation or the laws that govern them. Those laws are addressed only in a separate agreement between the parties – Sedgwick's Partner Handbook – which contains no arbitration provision. Accordingly, the Court should deny Sedgwick's motion because the arbitration provision at issue does not apply to Ribeiro's statutory employment discrimination and retaliation claims.

## II.   PROCEDURAL AND FACTUAL BACKGROUND

Ribeiro began her employment at Sedgwick SEALED in January 2011. *Declaration of Traci Ribeiro in Support of Plaintiff's Opposition to Defendant Sedgwick LLP's Motion to Compel Arbitration and to Stay Proceedings* ("*Ribeiro Decl.*") at ¶ 9.[1] Pursuant to Ribeiro's SEALED

*Ribeiro Decl.* at ¶ 11. Upon joining Sedgwick, Ribeiro sought to advance and be promoted within the firm SEALED

*Ribeiro Decl.* at ¶ 10. SEALED

*Ribeiro Decl.* at ¶ 13. Ribeiro's employment continued in early 2012 even though she had not signed or agreed to the Partnership Agreement – only her compensation changed. *Ribeiro Decl.* at ¶¶ 13-22.

Sedgwick began compensating Ribeiro differently effective January 2012 despite the fact she had not agreed to the Partnership Agreement; SEALED

*Ribeiro Decl.* at ¶¶ 15-19. Ribeiro worked for Sedgwick in January and early February 2012 based on the understanding that she would earn

---

[1] Sedgwick's Partnership Agreement specifies SEALED
. *Ribeiro Decl.* at ¶ 6. Throughout Ribeiro's employment, the Chair of the Firm and the majority of the Executive Committee members have been from Sedgwick's California offices and all are Equity Partners. *Ribeiro Decl.* at ¶ 7. Before 2016, all Executive Committee members have been male. *Ribeiro Decl.* ¶ 7.

2

1   more SEALED

2                                                                    *Ribeiro Decl.* at ¶¶ 16-

3   20.  Because SEALED                                      , Ribeiro had no guarantee of

4   continued employment.  *Ribeiro Decl.* at ¶¶ 11-12.  Thus, Ribeiro had to choose between ending

5   her employment with Sedgwick and forgoing potential additional compensation or "agreeing" to

6   an arbitration provision in Sedgwick's Partnership Agreement which she could not negotiate or

7   modify.  *Ribeiro Decl.* at ¶¶ 16-22, 32-33.

8          Ribeiro continued working as SEALED                                        .

9   *Ribeiro Decl.* at ¶ 23.  Little about Ribeiro's status changed – SEALED

10                     and had no meaningful authority.  *Ribeiro Decl.* at ¶¶ 32-40.  As a Non-Equity

11  Partner, like an associate or any other attorney who is not an Equity Partner, SEALED

12

13

14                               *Id.*  As a Non-Equity Partner, Ribeiro also does

15  not have the power or authority SEALED

16          *Ribeiro Decl.* ¶ 40.  SEALED

17                               *Ribeiro Decl.* at ¶¶ 32-40.

18         On November 27, 2012, Ribeiro learned from Sedgwick's then-General Counsel that

19  Sedgwick's Equity Partners had amended the Partnership Agreement.  *Ribeiro Decl.* at ¶¶ 23-25.

20  Among other changes, the amendments SEALED

21                                                                             .

22  *Declaration of Bruce Celebrezze in Support of Defendant Sedgwick LLP's Motion to Compel*

23  *Arbitration and to Stay This Action ("Celebrezze Decl.")* at ¶ 9.

24         As of November 2012, Ribeiro still had not received SEALED

25                                                                               .

26  *Ribeiro Decl.* at ¶¶ 26-27.  The December 2011 notice Ribeiro received from Sedgwick about her

27  compensation as a partner explained SEALED

28
                                            3

1    SEALED   *Ribeiro Decl.* at ¶¶ 19, 26-27.  Ribeiro again had to decide between walking away from

2    money owed to her that she earned throughout 2012 or "agreeing" to Sedgwick's non-negotiable

3    amended arbitration provision.  *Ribeiro Decl.* at ¶¶ 24-27.  Ribeiro signed an acknowledgment of

4    the amendments.  *Ribeiro Decl.* at ¶ 27.

5        Throughout her employment at Sedgwick, Ribeiro opposed women being paid less than

6    men.  *Ribeiro Decl.* at ¶ 47.  On January 15, 2016, Ribeiro (through her counsel) initiated a

7    formal complaint of gender discrimination and retaliation with Sedgwick's then-General Counsel

8    Bruce Celebrezze.  *Wood Decl.* at ¶¶ 3-4.  In doing so, Ribeiro relied upon promises from

9    Sedgwick in its Partner Handbook.  *Wood Decl.* at ¶¶ 4-5.  Sedgwick's Partnership Agreement

10   does not reference discrimination, retaliation or the laws that prohibit them.  *Ribeiro Decl.* at

11   ¶¶ 4, 46.  But under the heading "Equal Opportunity Practices," Sedgwick's Partner Handbook

12   states SEALED

13

14                                                                                                    .

15   *Ribeiro Decl.* at ¶ 5.

16       After Sedgwick failed to take Ribeiro's complaint seriously, Ribeiro filed a charge of

17   systemic gender discrimination and retaliation with the Equal Employment Opportunity

18   Commission ("EEOC") against Sedgwick LLP on February 17, 2016.  *Wood Decl.* at ¶ 6;

19   *Ribeiro Decl.* ¶ 47.  Only then did Sedgwick initiate an internal investigation of her allegations

20   pursuant to its Partner Handbook.  *Wood Decl.* at ¶¶ 6-8.

21       While that investigation was ongoing, on April 8, 2016 – only ten days after the EEOC's

22   March 29 notice it would investigate Ribeiro's charge – Sedgwick filed an arbitration demand

23   against Ribeiro seeking a "declaratory judgment that it neither discriminated nor retaliated

24   against her in setting her compensation, in determining whether she should be elected equity

25

26   [2] The Handbook also states Sedgwick SEALED

27

28                                                            *Ribeiro Decl.* at ¶ 44.

4

1  partner, or on any other ground." *Wood Decl.* at ¶ 9.[3]

2       On April 20, 2016, JAMS determined that JAMS' Policy on Employment Minimum

3  Standards of Procedural Fairness would not apply to the arbitration. *Wood Decl.* at ¶ 11.  That

4  day, Ribeiro asked JAMS to reconsider its decision so she could avail herself of Section C of

5  JAMS' standards, which permits a stay of arbitration for a judicial determination of arbitrability.

6  *Wood Decl.* at ¶ 12.  JAMS denied this request, confirming commencement of arbitration under

7  JAMS' Comprehensive Arbitration Rules as of April 26, 2016.  *Wood Decl.* at ¶ 12.

8       After receiving notice from JAMS that the arbitration had commenced, Ribeiro's counsel

9  contacted Sedgwick to discuss proposed modifications and/or waivers of the arbitration process

10 necessary for the forum to effectively vindicate Ribeiro's statutory claims under *Armendariz v.*

11 *Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83 (2000).  Sedgwick initially refused any and

12 all modifications SEALED            *Wood Decl.* at ¶¶ 13-17.

13      Through her counsel, Ribeiro repeatedly notified JAMS and Sedgwick that she contested

14 JAMS' jurisdiction over her statutory employment discrimination claims and that she intended to

15 raise this issue in Court.  *Wood Decl.* at ¶¶ 10-12, 18-19.  Ribeiro also sought to stay the

16 arbitration prior to appointment of an arbitrator to avoid triggering the limited time for

17 completion of the arbitration SEALED            .  *Wood Decl.* at ¶¶ 18-20.

18      The parties' counsel again discussed potential modifications SEALED      beginning

19 on June 29, including modifications to provisions regarding access to discovery, the length of

20 time to complete the hearing and costs Ribeiro was required to bear under the arbitration

21 provision.  *Wood Decl.* at ¶¶ 21-27.  The parties could not agree on modifications to the

22 arbitration process that would ensure that Ribeiro had a fair and effective forum in which to

23 vindicate her statutory rights, as their counsel's correspondence shows.  *Wood Decl.* at ¶¶ 24-26.

24      Ribeiro filed suit in state court on July 26, 2016, alleging – among other things – a claim

25

26 ───────────────
   [3] Ribeiro's counsel accepted service of Sedgwick's Demand for Arbitration and explained that
27 Sedgwick's Demand placed Ribeiro's statutory employment discrimination and retaliation
   claims "at issue in arbitration" – but only to avoid a claim by Sedgwick that Ribeiro was barred
28 from pursuing them.  *Wood Decl.* at ¶ 10.

─────────────────────────────────────────
PLAINTIFF'S OPPOSITION TO DEFENDANT SEDGWICK LLP'S MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDINGS - Case No. 3:16-04507 WHA

1  for declaratory relief challenging the enforceability of the arbitration provisions in SEALED

2  in addition to the statutory employment discrimination and retaliation claims raised by the facts

3  described in her EEOC charge.  *Wood Decl.* at ¶ 28.  To date, Ribeiro has been charged over

4  $3200 in arbitration fees, only some of which have been reimbursed, and Sedgwick still has not

5  notified JAMS of any of the modifications it claims it will make to SEALED

6  unconscionable provisions.  *Wood Decl.* at ¶¶ 29-36.

7  **III.   ARGUMENT**

8        It is a settled principle of law that "arbitration is a matter of contract." *United*

9  *Steelworkers of Am. v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582 (1960).  Sedgwick argues -

10  and Ribeiro does not dispute - that the Federal Arbitration Act sets forth standards pursuant to

11  which its motion must be decided.  *See Defendant Sedgwick LLP's Motion to Compel*

12  *Arbitration and to Stay Proceedings* (*"Def's MPA"*) at 8, fn. 8.  As this Court explained:

13              A district court's role under the FAA is limited to determining: (1) whether a
             valid agreement to arbitrate exists and, if it does, (2) whether the
14              agreement encompasses the dispute at issue. If the district court determines that a valid
             arbitration agreement encompasses the dispute, then the FAA requires the court to
15              enforce the arbitration agreement according to its terms.

16

17  *Assaad v. Am. Nat'l Ins. Co.*, No. C 10-03712 WHA, 2010 U.S. Dist. LEXIS 138501, at *4 (N.D.

18  Cal. Dec. 23, 2010) (citing *Lifescan, Inc. v. Premier Diabetic Servs.,* 363 F.3d 1010, 1012 (9th

19  Cir. 2004)).[4]  Thus, principles of contract formation and interpretation determine whether an

20  arbitration provision is enforceable notwithstanding any public policy favoring arbitration.

21        **A.      In Arguing That This Court Must Honor Sedgwick's After-The-Fact**
                 **Delegation Clause, Sedgwick Puts The Cart Before The Horse.**
22

23        In an effort to send this entire matter – including the enforceability of the arbitration

24

---

25  [4] The parties agree that, pursuant to the FAA, the Court should apply ordinary state law

26  principles that govern the formation of contracts.  *See Def's MPA* at 11; *see also Davis v.*
    *O'Melveny & Myers,* 485 F.3d 1066, 1072-1073 (9th Cir. 2007). The parties also agree that

27  California law applies, SEALED                                    .  *Def's MPA* at 11; *Ribeiro Decl.*

28  at ¶¶ 4, 29.

6

1    provision – to the arbitrator, Sedgwick points to SEALED

2    Sedgwick claims that – pursuant to Sedgwick's unilateral modification

3    adding the delegation clause – the parties have delegated questions regarding enforceability of

4    the arbitration provision to the arbitrator so this Court cannot decide whether the parties' dispute

5    is subject to arbitration.  *See Def's MPA* at 5 (arguing that "the court determines the

6    enforceability of an arbitration agreement <u>unless</u> the parties agree otherwise pursuant to what is

7    commonly referred to as a delegation clause").  This argument puts the proverbial cart before the

8    horse.  As Sedgwick acknowledges, *id.,* the delegation clause is only enforceable if "the parties

9    have 'clearly and unmistakably' agreed that the arbitrator must decide" questions of arbitrability.

10   That requires analyzing whether a valid agreement exists.

11         As the California Supreme Court recently explained, "[t]o presume arbitrability without

12   first establishing, independently, consent to arbitration is to place the proverbial cart before the

13   horse."  *Sandquist v. Lebo Auto.*, No. S220812, 2016 Cal. LEXIS 6246, *23-24 (July 28, 2016).

14   Prior to enforcing the "delegation clause," this Court must first determine whether SEALED

15   creates an enforceable arbitration agreement. *See* 9 U.S.C. § 4 (permitting an order to compel

16   arbitration only upon the Court "being satisfied that the making of the agreement for arbitration

17   … is not in issue").

18         The Ninth Circuit's recent decision in *Mohamed v. Uber Techs.*, Nos. 15-16178, 15-

19   16181, 15-16250, 2016 U.S. App. LEXIS 16413, at *15 (9th Cir. Sep. 7, 2016) reiterated that

20   delegation clauses are subject to the same standards of contract enforcement as all other

21   arbitration agreements and, thus, may be revoked based upon a "generally applicable contract

22   defense, such as fraud, duress, or unconscionability." *Id.* at *15 (finding lack of

23   unconscionability based on a party's right to "opt out" of the arbitration process).

24         This conclusion makes sense, because arbitration "agreements" that are improperly

25   formed under California law are not enforceable contracts.  *See, e.g., Three Valleys Mun. Water*

26   *Dist. v. E.F. Hutton & Co.,* 925 F.2d 1136, 1141 (9th Cir. 1991).  Absent a finding that an

27   agreement to arbitrate discrimination and retaliation claims exists, an arbitrator has no authority

28

7

PLAINTIFF'S OPPOSITION TO DEFENDANT SEDGWICK LLP'S MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDINGS - Case No. 3:16-04507 WHA

1   to act under the delegation clause (or any other aspect of SEALED          ).  Accordingly, this Court

2   must first determine whether the parties entered into an enforceable arbitration agreement under

3   California law before referring the matter to arbitration for application of the delegation clause.

4       **B.**     SEALED                                    **Does Not Create An**
        **Enforceable Agreement To Arbitrate Ribeiro's Statutory Employment**

5       **Claims.**

6           When grounds "exist at law or in equity for the revocation of any contract," courts may

7   decline to enforce arbitration agreements.  *Ingle v. Circuit City Stores, Inc.,* 328 F.3d 1165, 1170

8   (9th Cir. 2003).  Under California law, an arbitration agreement may be invalidated for the same

9   reasons as other contracts, including unconscionability.  *Id.*; *see also Armendariz*, 24 Cal. 4th at

10  98.  Courts may refuse to enforce any contract found "to have been unconscionable at the time it

11  was made" or may "limit the application of any unconscionable clause." *Nagrampa v.*

12  *MailCoups, Inc.,* 469 F.3d 1257, 1280 (9th Cir. 2006); Cal. Civ. Code Ann. § 1670.5(a).

13          To invalidate SEALED        the Court must find procedural and substantive

14  unconscionability present, but the amount of each necessary is a sliding scale.  *Davis*, 485 F.3d at

15  1072; *Macias v. Excel Bldg. Servs. LLC,* 767 F. Supp. 2d 1002, 1007 (N.D. Cal. 2011) (citing

16  *Stirlen v. Supercuts, Inc.,* 51 Cal. App. 4th 1519 (1997)).  Procedural unconscionability focuses

17  on "oppression" or "surprise" due to unequal bargaining power, such as contracts of adhesion;

18  while substantive unconscionability considers "overly harsh" or "one-sided" results.

19  *Armendariz*, 24 Cal. 4th at 114.  Here, SEALED        is both procedurally and substantively

20  unconscionable and, therefore, cannot be enforced.

21          **1.    Defendant's Claim That *Armendariz* Does Not Apply To Plaintiff's**
                **Statutory Discrimination And Retaliation Claims Is Erroneous.**

22

23          Sedgwick argues that SEALED        is not subject to the *Armendariz* minimum due

24  process standards because Ribeiro "is not an employee" and this is "not an employer-employee

25  situation." *Def's MPA* at 13 and 19.  Sedgwick's argument lacks merit because the application of

26  *Armendariz* depends upon whether the complaint alleges non-waivable claims (as Ribeiro does).

27          To begin, Sedgwick cites no authority for its assertion that an individual who is a "Non-

28

8

1   Equity Partner" is not an employee.  That is because courts addressing this issue have held that

2   individuals classified as "partners" are, in fact, employees unless they share in profits and

3   possess meaningful governance authority.  *See, e.g., Strother v. S. Cal. Permanente Med. Group.,*

4   79 F.3d 859, 867-68 (9th Cir. 1996) (explaining that to determine whether an individual is an

5   employee for purpose of enforcing discrimination laws, "Courts must analyze the true

6   relationship among partners, including the method of compensation, the 'partner's' responsibility

7   for partnership liabilities, and the management structure and the 'partner's' role in that

8   management;" finding that the physician "partner" was an employee under FEHA); *see also*

9   *Panepucci v. Honigman Miller Schwartz & Cohn, LLP*, 408 F. Supp. 2d 374, 377-78 (E.D. Mich.

10  2005) (denying a motion to dismiss and holding that plaintiff – a "percentage partner" at a law

11  firm – could be an "employee" for purposes of Title VII); *Rosenblatt v. Bivona & Cohen, P.C.,*

12  *969* F. Supp. 207, 215 (S.D.N.Y. 1997) ("Even were defendant organized not as a professional

13  corporation, but as a partnership, plaintiff [a non-equity partner attorney] would still qualify as

14  an employee under Title VII.").[5]  This Court should not hold otherwise, particularly at this stage.

15       Second, Sedgwick has not presented any *evidence* to support its claims that Ribeiro is not

16  an employee.  The economic realities of Ribeiro's relationship with Sedgwick demonstrate that

17  Sedgwick is her employer and she its employee.  SEALED

18

19

20

21                                                                                                           .

22

23  [5] Under the Americans with Disabilities Act, which defines "employee" similarly to those
24  statutes under which Ribeiro brings her claims, the Supreme Court encouraged examination of
    the economic realities of the relationship to determine if an individual is an "employee."  *See*
25  *Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 450-51 (2003) (relying on
    EEOC's guidance and stating "an employer is the person, or group of persons, who owns and
26  manages the enterprise. The employer can hire and fire employees, can assign tasks to employees
    and supervise their performance, and can decide how the profits and losses of the business are to
27  be distributed. The mere fact that a person has a particular title -- such as partner, ... -- should
    not necessarily be used to determine whether he or she is an employee or a proprietor").
28

9

PLAINTIFF'S OPPOSITION TO DEFENDANT SEDGWICK LLP'S MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDINGS - Case No. 3:16-04507 WHA

1   *Ribeiro Decl.* at ¶¶ 32-40.  SEALED

2

3                                           .  *Ribeiro Decl.* at ¶¶ 32-40.

4         As these facts show, Ribeiro is Sedgwick's employee, which requires the arbitration

5   provision to be measured against the *Armendariz* factors.  Regardless, *Armendariz* applies

6   because Ribeiro bases her *claims* on laws which California courts have held create unwaivable

7   statutory rights.  *See Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1076-77 (2003) (explaining

8   that Armendariz factors were created to ensure that arbitration agreements provide for the

9   effective vindication of non-waivable statutory rights).  Therefore, this Court must apply the

10  *Armendariz* factors to Sedgwick's arbitration provision to protect the public policy behind the

11  statutes Ribeiro seeks to enforce.[6]  In the event the Court is unpersuaded that *Armendariz* applies

12  or finds disputes of fact, Ribeiro respectfully requests that the Court proceed to a limited jury

13  trial to resolve the dispute over Ribeiro's status as an employee.  *See, e.g., Assaad*, No. C 10-

14  03712 WHA, 2010 U.S. Dist. LEXIS 138501, at *6 (noting Section 4 of the FAA permits jury

15  trials to resolve disputed facts necessary to determine if an arbitration agreement exists).[7]

16        **2.**        SEALED              **Is A Procedurally Unconscionable Contract Of
                                             Adhesion.**

17

18        Procedural unconscionability analysis begins with an inquiry into whether the contract is

19  one of adhesion. *Armendariz*, 24 Cal. 4th at 113. "The term [contract of adhesion] signifies a

20

21  _____

    [6] Sedgwick claims it did not waive arbitration by invoking the Court's process for determination
22  of the dispute.  *Def's MPA* at 12.  But by repeatedly arguing Ribeiro is not an "employee,"
    Sedgwick asks this Court to decide an issue central to its claim for declaratory relief.  *Def's MPA*
23  at 8, fn.8, 13, 19.  However, this Court can evaluate the *Armendariz* standards without deciding
    the issue definitively, because the parties' relationship bears characteristics sufficiently similar to
24  an employee-employer relationship.  *See, e.g., AT&T Mobility II v. Pestano*, No. C 07-05463
    WHA, 2008 U.S. Dist. LEXIS 23135, at *8-*17 (N.D. Cal. Mar. 7, 2008) (applying *Armendariz*
25  to an arbitration provision in a dealer agreement between a cellular carrier and wireless products
    seller because the relationship shared similar characteristics).
26  [7] Ribeiro's complaint specifically requests a jury trial – including in the First Cause of Action –
    seeking declaratory relief regarding the enforceability of the arbitration agreement.  (dkt. 1,
27  Complaint, at 1, 13-15).

28

                                                10
    _____

1  standardized contract, which, imposed and drafted by the party of superior bargaining strength,

2  relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Id.*

3  (citation omitted).  "A finding of a contract of adhesion is essentially a finding of procedural

4  unconscionability." *Nagrampa,* 469 F.3d at 1281 (citation omitted).

5         In assessing whether the arbitration provision is a contract of adhesion, Defendant

6  focuses on whether Ribeiro had the opportunity to review SEALED      in its original and

7  amended forms.  But, as Sedgwick begrudgingly acknowledges, *Def's MPA* at 20, what matters

8  for determining unconscionability is whether Ribeiro received an opportunity to *negotiate* any

9  terms, not review them.

10         An arbitration agreement that is an essential part of a "take it or leave it" employment

11 condition, without more, is procedurally unconscionable.  *Nagrampa,* 469 F.3d at 1280; *Macias,*

12 767 F. Supp. 2d at 1007 (citing *Armendariz,* 24 Cal. 4th 83).  Under California law, "[w]hen the

13 weaker party is presented the clause and told to "take it or leave it" without the opportunity for

14 meaningful negotiation, oppression, and therefore procedural unconscionability, are present."

15 *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1100 (2002).

16         Sedgwick concedes that Ribeiro's only choices were to accept the terms of the

17 Partnership Agreement or "not become a partner."  *Def's MPA* at 19-20. Sedgwick offers no

18 support for its contention that Ribeiro could have "continued her employment with the firm." *Id.*

19 at 19.  And, the cancellation of SEALED                              shows that at the time

20 Ribeiro was asked to accept the Partnership Agreement in early 2012, Ribeiro's SEALED

21          had already ended SEALED                             .

22 *Ribeiro Decl*. at ¶¶ 11, 12, 15, 21.

23         Sedgwick presented the arbitration clause – like all terms of the Partnership Agreement –

24 on a "take it or leave it" basis; SEALED

25                              *Ribeiro Decl*. at ¶¶ 22, 25, 27, 33.  The date on which

26 Ribeiro first received the agreement is not clear.  *Ribeiro Decl*. at ¶¶ 13-14. What is clear is that

27 Ribeiro risked losing compensation for the work she performed in January and early February

28

PLAINTIFF'S OPPOSITION TO DEFENDANT SEDGWICK LLP'S MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDINGS - Case No. 3:16-04507 WHA

1   2012 as well as the chance to earn additional compensation throughout 2012 if she refused to

2   sign the Partnership Agreement.  *Ribeiro Decl.* at ¶¶ 15-22.  And later in 2012, when Sedgwick

3   presented Ribeiro with the amended Partnership Agreement containing a "delegation clause" in

4   SEALED            , Ribeiro again risked losing compensation that she had worked all year to earn.

5   *Ribeiro Decl.* at ¶¶ 23-28.  Her choices were to either accept Sedgwick's unilateral modification

6   or forgo her job and additional compensation.  *Ribeiro Decl.* at ¶¶ 23-28.  These "take it or leave

7   it" contracts offered Ribeiro no meaningful choice.

8          In attempting to avoid the adhesive nature of these contracts, Sedgwick emphasizes that

9   Ribeiro was a sophisticated attorney who was permitted to ask questions about the Partnership

10  Agreement.  But those facts are irrelevant absent any opportunity to *negotiate*.  *See Davis,* 485

11  F.3d at 1073-74 (recognizing that while employees working at an international law firm were

12  "invited to ask questions" about the arbitration agreement, that did not "indicate that the terms

13  were negotiable"); *see also Nyulassy v. Lockheed Martin Corp.,* 120 Cal. App. 4th 1267, 1285-

14  1286 (2004) (holding that even where an employee is represented by counsel during contract

15  negotiation, the contract may still be found procedurally unconscionable where no opportunity

16  for meaningful negotiation exists).  Sedgwick all but concedes as much by citing a case finding

17  procedural unconscionability even though a party was a highly educated attorney because the

18  terms presented were non-negotiable.  *Def's MPA* at 20 (citing *Dotson v. Amgen, Inc.*, 181 Cal.

19  App. 4th 975, 981 (2010)).

20         Because Sedgwick presented Ribeiro with an arbitration "agreement" which she had no

21  opportunity to negotiate, and that Sedgwick could unilaterally change without Ribeiro's input,

22  procedural unconscionability exists and this Court should not compel arbitration of Ribeiro's

23  claims.  Ribeiro's sophistication is irrelevant because Sedgwick offered terms on a "take it or

24  leave it" basis.  Ribeiro had no opportunity to apply her sophistication with Sedgwick – except to

25  use it to realize that refusing Sedgwick's terms meant losing her job and compensation she had

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT SEDGWICK LLP'S MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDINGS - Case No. 3:16-04507 WHA

1    already worked to earn.[8]

2        **3.        SEALED        Is Substantively Unconscionable Because It Precludes**
3                    **Effective Vindication Of Ribeiro's Statutory Employment Claims.**

4        An arbitration provision is substantively unconscionable if it is "overly harsh" or

5    generates "one-sided results." *Nagrampa*, 469 F.3d at 1280; *Armendariz*, 24 Cal. 4th at 114.

6    California law requires an arbitration agreement to have a "modicum of bilaterality," *see*

7    *Armendariz*, 24 Cal. 4th at 117, and arbitration provisions that are "unfairly one-sided" are

8    substantively unconscionable. *Nagrampa*, 469 F.3d at 1281; *Little*, 29 Cal. 4th at 1071.  A

9    finding of one-sidedness may be premised on the actual effect of the terms, rather than a

10   superficial reading, where it is clear that the terms would in practice benefit one party. *Macias,*

11   767 F. Supp. 2d at 1009; *see also Stirlen*, 51 Cal. App. 4th at 1540-1541.

12       "[I]t is evident that an arbitration agreement cannot be made to serve as a vehicle for the

13   waiver of statutory rights." *Armendariz*, 24 Cal. 4th at 101.  Under California law, a right or

14   cause of action created for a public purpose cannot, by private agreement, be waived,

15   contravened, burdened, *or subjected to procedural shortcomings* that would preclude its

16   vindication. *Nagrampa*, 469 F.3d at 1292; *Armendariz*, 24 Cal. 4th at 100 (explaining that this

17   rule derives from California Civil Code section 3513, which prohibits the contractual waiver of

18   legal rights established for a public purpose).  Sedgwick's arbitration provision precludes

19   effective vindication of Ribeiro's claims by unlawfully shortening the statute of limitations,

20   limiting the time to develop and present evidence and imposing substantial costs on Ribeiro.

21   //

22

23   _____
     [8] SEALED        failed to append JAMS Commercial Arbitration rules to the Partnership
24   Agreement, which Courts have found as evidence of procedural unconscionability.  *See, e.g.*,
     *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 997 (9th Cir. 2010); *see also Raymundo v. ACS State*
25   *Local Solutions, Inc.*, No. 13-cv-00442-WHA, 2013 U.S. Dist. LEXIS 40141, *10-11 (N.D. Cal.
     May 16, 2013) (finding that "failing to append or link to the JAMS and AAA rules added
26   procedural unconscionability").  Through the "take it or leave it" provision Sedgwick presented
     to Ribeiro, Sedgwick required Plaintiff to "agree" that SEALED
27
                                              *Celebrezze Decl.* Ex. D.
28                                                    13

1          **a.**    SEALED        **Unlawfully Shortens Limitations Periods.**

2        The Ninth Circuit has held that shortening a statute of limitations to one year is

3 oppressive and substantively unconscionable. *See Davis v. O'Melveny & Myers*, 485 F.3d 1066,

4 1076-1077 (9th Cir. 2007) ("We have previously held that forcing employees to comply with a

5 strict one-year limitation period for employment-related statutory claims is oppressive in a

6 mandatory arbitration context" and noting the impact on systemic discrimination claims like

7 those Ribeiro alleges); *see also Circuit City Stores v. Adam*s, 279 F.3d 889, 894 (9th Cir. 2002);

8 *Martinez v. Fire Master Protection Corp.,* 118 Cal. App. 4th 107, 117-118 (Cal. App. 2d Dist.

9 2004) (holding the "shortened limitations period provided by FireMaster's arbitration agreement

10 is unconscionable"). SEALED

11        – a provision Sedgwick insists applies to Ribeiro's claims – clearly unlawfully

12 shortens the limitations period making SEALED       substantively unconscionable.

13          **b.**    SEALED        **Does Not Provide An Adequate Tribunal.**

14       SEALED

15

16

17        *Celebrezze Decl.* Ex. D.  Combined with SEALED

18        those time periods leave Non-Equity Partners like Ribeiro with less time to

19 *conclude* statutory discrimination and retaliation claims than other employees have to initiate

20 them.  Courts have found this substantively unconscionable because there is not "sufficient time

21 for the effective pursuit of the judicial remedy."  *Ellis v. U.S. Sec. Assocs.,* 224 Cal. App. 4th

22 1213, 1222 (2014); *see also Davis*, 485 F.3d at 1076-1077.

23        Moreover, the shortened time period for completion of the hearing also effectively

24 precludes individuals from pursuing investigation of an administrative charge filed with the

25 EEOC or the appropriate state investigative agencies prior to adjudication of the case, which

26 courts have considered substantively unconscionable.  *Ellis,* 224 Cal. App. 4th at 1222-23.

27 Although Ribeiro filed her charge (and asked that it be cross-filed with the Illinois and California

28

1   state civil rights enforcement agencies), none of those agencies has completed its investigation,

2   let alone issued a right to sue letter.  Nevertheless, Sedgwick insists on immediately arbitrating

3   Ribeiro's claims.  Sedgwick's failure to permit Ribeiro to avail herself of the administrative

4   proceedings is a further indication of substantive unconscionability.

5        Sedgwick correctly notes SEALED           requires the arbitrator to apply California law in

6   fashioning a remedy.  But by initiating the arbitration seeking declaratory relief, Sedgwick asks

7   the arbitrator to award relief that would be unavailable in Court.  Nothing in Title VII, the

8   Illinois Human Rights Act, or the California Fair Housing and Employment Act authorizes an

9   employer to initiate a declaratory action against an employee.[9]  Sedgwick's use of the arbitral

10  forum to initiate an action seeking relief it could not obtain in Court on Plaintiff's unwaivable

11  statutory claims demonstrates substantive unconscionability.

12       Finally, because an arbitrator was appointed on July 29, 2016, SEALED           requires that

13  the hearing of evidence commence SEALED

14                    *Wood Decl.* at ¶ 29.  Yet, with this motion pending, the parties have not yet

15  scheduled an arbitration hearing date, let alone begun discovery.  *Wood Decl.* at ¶ 33.  Thus, if

16  this motion is granted, and Ribeiro is forced to arbitrate her claims SEALED

17       , she will have less than a month to conduct discovery.

18

19  [9] Sedgwick cannot obtain relief in arbitration because the California Fair Employment and
    Housing Act's remedial provisions only authorize relief to "aggrieved parties," which does not
20  include employers. *See* Cal. Gov. Code §12965(c) (authorizing courts to grant relief in actions
    filed pursuant to subdivision (a)); *see also* §12965(a) (limiting civil actions to be brought on
21  behalf of aggrieved parties and identifying the aggrieved party as the one against whom unlawful
    practices were committed (i.e., not the employer)). Similarly, Sedgwick cannot obtain relief in
22  arbitration because the Illinois Human Rights Act's remedial provisions only authorize relief for
    "complainants," which does not include employers. *See* 775 Ill. Comp. Stat. 5/8A-104 (limiting
23  relief to awards for a "complainant"). Sedgwick cannot obtain relief in arbitration because Title
    VII's remedial provisions only authorize relief to a "complaining party," which does not include
24  employers.  *See* 42 USC 2000e-(5)(g) (limiting relief to awards against a "respondent"); 42 USC
    2000e-(1)(n) (defining respondent to include "employer" but not "employee"); *see also* 42 USC
25  1981a (defining "complaining party" as a "person who may bring an action under Title VII").
    As the Supreme Court explained, "Title VII does not provide employers with a cause of action
26  against employees. An employer cannot be the victim of discriminatory employment practices."
    *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 54 (1974).

27

28

15

PLAINTIFF'S OPPOSITION TO DEFENDANT SEDGWICK LLP'S MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDINGS - Case No. 3:16-04507 WHA

1    Despite Ribeiro's requests, Sedgwick refuses to agree to provide her with the time

2  necessary to gather and present evidence in support of her claims.  *Wood Decl.* at ¶¶ 16-17, 21-

3  27.[10]  With respect to timing, Sedgwick rejected Ribeiro's request to modify SEALED      to

4  permit the hearing to be initiated and completed on a schedule to be determined by the

5  Arbitrator, instead only offering to extend the hearing deadline by 60 days without opposition

6  (SEALED                                               ) – a proposal which

7  Ribeiro rejected.  *Wood Decl.* at ¶¶ 16-17, 21-27; *Geannacopulos Decl.* at ¶¶ 6-8, 11-14.

8  Ironically, despite its claimed agreement, Sedgwick refused to acknowledge that it would extend

9  the time for completion of the arbitration hearing during the initial status conference call with the

10  Arbitrator.  *Wood Decl.* at ¶ 33.  Even with Sedgwick's proposed unilateral modification, SEALED

11    does not permit sufficient time to gather or present evidence for Ribeiro's claims and,

12  therefore, fails to provide an adequate tribunal for her statutory employment discrimination and

13  retaliation claims.  As such, it is substantively unconscionable.

14                    c.    SEALED        **Limits Important Discovery Tools.**

15    In addition to restricting the time to gather and present evidence, SEALED      also limits

16  commonly available discovery tools.  Adequate discovery is indispensable for the vindication of

17  statutory claims. *Ontiveros v. DHL Express (USA), Inc.,* 164 Cal. App. 4th 494, 512 (Cal. App.

18  1st Dist. 2008) (citation omitted).  "Adequate" discovery does not mean unfettered discovery;

19  however, arbitration agreements must "ensure minimum standards of fairness so employees can

20  vindicate their public rights." *Id.*

21    SEALED                                         . The impact of this

22  restriction is one-sided. "This is because the employer already has in its possession many of the

23  documents relevant to an employment discrimination case as well as having in its employ many

24  _____

25  [10] *After* Sedgwick initiated its arbitration demand against Ribeiro (not before), Plaintiff's counsel
   contacted Sedgwick's counsel about 9 modifications to the arbitration provision.  *Wood Decl.* at

26  ¶¶ 14-16.  Sedgwick initially rejected all proposed modifications and, after a second failed
   mediation, partially agreed to some.  *Wood Decl.* at ¶¶ 16-17, 21-27; *Geannacopulos Decl.* at

27  ¶¶ 6-8, 11-14.  Plaintiff's counsel explained that Sedgwick's partial acceptance was not
   agreeable.  *Wood Decl.* at ¶¶ 23, 25-27; *Geannacopulos Decl.* at ¶ 13.

28                                         16

1  of the relevant witnesses." *Fitz v. NCR Corp.,* 118 Cal. App. 4th 702, 716 (2004) (citation

2  omitted); *see also Kinney v. United Healthcare Servs.,* 70 Cal. App. 4th 1322, 1332 (Cal. App.

3  4th Dist. 1999) ("Given that [the employer] is presumably in possession of the vast majority of

4  evidence that would be relevant to employment-related claims against it, the limitations on

5  discovery, although equally applicable to both parties, work to curtail the employee's ability to

6  substantiate any claim against [the employer]").

7        As with Ribeiro's attempts to address the time permitted for the hearing, Sedgwick did

8  not agree to any modifications proposed by Ribeiro's counsel – it only offered modifications it

9  found acceptable. *Wood Decl.* at ¶¶ 17, 21-22, 24. But Sedgwick's unilateral changes do not

10  constitute modifications, because Ribeiro has not agreed to the minimal changes Sedgwick

11  offered. *Wood Decl.* at ¶¶ 23, 25-27.

12        California law is clear that a party who creates an unconscionable arbitration agreement

13  cannot salvage it by unilaterally agreeing to eliminate offending provisions. *Armendariz*, 24 Cal.

14  4th at 127 (offers that are not accepted do not modify contracts); *Assaad*, No. C 10-03712 WHA,

15  2010 U.S. Dist. LEXIS 138501, at *29. Thus, any discussions about modifying the arbitration

16  provisions could only be effective upon acceptance by both parties and, here, Ribeiro is not

17  obligated to accept them. Even if Ribeiro had accepted Sedgwick's proposed modifications,

18  there are no guarantees Sedgwick would honor them absent SEALED

19                                      .[11]

20        Because Sedgwick possesses virtually all of the information necessary to evaluate the

21  parties' claims – and claims Ribeiro is not entitled to that information under the terms of the

22  Partnership Agreement – the limitation on discovery will adversely affect Ribeiro, but will have

23  no impact upon Sedgwick.[12] Absent oversight by this Court, there is no guarantee Sedgwick will

24

25  _____

[11] SEALED

26         . *Ribeiro Decl.* at ¶¶ 4, 36-37. SEALED

27                                     . *Ribeiro Decl.* at ¶ 30.

[12] For example, by the terms of the Partnership Agreement, Sedgwick restricted Ribeiro's access

28  to SEALED                     . *Ribeiro Decl.* ¶ 38. As explained in her motion to file under

17

1  not attempt to convince an arbitrator that this provision precludes sharing information about

2  partners' compensation with Ribeiro during discovery.  SEALED

3

4           **d.    SEALED        Unlawfully Imposes Costs On Ribeiro.**

5           Any arbitration provision that imposes "substantial forum fees" on an employee in her

6  attempt to vindicate her unwaivable statutory rights is contrary to public policy and therefore

7  substantively unconscionable.  *See Assaad*, No. C 10-03712 WHA, 2010 U.S. Dist. LEXIS

8  138501, at *16 (holding that ambiguous cost-shifting terms "might well deter an action and chill

9  the exercise of statutory rights"); *Armendariz*, 24 Cal. 4th at 110; *see also Sonic-Calabasas A,*

10 *Inc. v. Moreno*, 57 Cal. 4th 1109, 1144 (2013) (reaffirming this provision under FAA).

11          Here, SEALED              contravenes California law by mandating that Ribeiro SEALED

12

13

14

15

16          The arbitrator JAMS appointed charges $500/hour and JAMS also charges an

17 administrative fee.  *Wood Decl.* at ¶¶ 29-31.[13]  Given this rate, each party's fees to conduct the

18 hearing and pre-trial proceedings will reach tens of thousands of dollars.  *Wood Decl.* at ¶ 29.

19 Such fees create a significant risk of dissuading individuals from continuing to pursue their

20 statutory employment discrimination and retaliation claims and are unconscionable.  *Assaad*,

21 No. C 10-03712 WHA, 2010 U.S. Dist. LEXIS 138501, at *17 (holding ambiguous cost-shifting

22 terms "might well deter an action and chill the exercise of statutory rights" particularly if the

23 agreement says "that a losing employee can be on the hook for the arbitrator's fees").

24

25 _____

26 seal, Sedgwick vigorously asserts confidentiality over compensation of putative class members, hampering Ribeiro's ability to pursue her systemic discrimination claims.

27 [13] To avoid the potential for default, Ribeiro participated in the selection of an arbitrator but attempted to stay appointment of the arbitrator to avoid those costs (and the limited time for

28 completion of the hearing discussed above).  *Wood Decl*. at ¶ 20.

18

PLAINTIFF'S OPPOSITION TO DEFENDANT SEDGWICK LLP'S MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDINGS - Case No. 3:16-04507 WHA

1   Sedgwick claims it "agreed, in writing, before Plaintiff filed suit, to pay all costs

2   associated with the arbitration," *Def's MPA* at 16, and argues that "Plaintiff waived any

3   challenge to this mutual modification because Plaintiff offered the modification and Sedgwick

4   accepted it – before the arbitration of Sedgwick's Demand commenced." *Id.* at 16, n. 12.[14]

5   However, the parties have never actually agreed to a set of modifications.  *Wood Decl.* at ¶¶ 13-

6   17, 21-27.  Ribeiro proposed a set of modifications and Sedgwick made a series of counter

7   proposals.  *Id.*  Ribeiro indicated that the counter proposals were insufficient and discussions

8   ended.  *Id.*  The parties did not actually agree to modify the arbitration agreement.  Contrary to

9   Sedgwick's assertion, proposed modifications met with *partial* acceptance do not create a

10  contract under California law.  *Armendariz*, 24 Cal. 4th at 127.

11          **e.**        **Sedgwick Retains The Sole Right To Modify** SEALED              .

12  Even if the Court finds Sedgwick's modifications eliminate unconscionability of SEALE

13  D   in its present form, there are no guarantees Sedgwick will not change the provision again.

14  As noted throughout, only Sedgwick's owners – its Equity Partners – have authority to vote on

15  amendments to the Partnership Agreement.  *Ribeiro Decl*. at ¶¶ 36-37.  In so doing, Sedgwick's

16  owners retained for themselves the unilateral right SEALED

17

18

19  *Ribeiro Decl*.

20  at ¶¶ 23-24, 36-37.

21  Courts have found arbitration agreements substantively unconscionable where one party

22

23  [14] Despite Sedgwick's unilateral statement that it would pay the costs of the arbitration, upon
    issuance of JAMS' invoice of $2,500, Sedgwick's counsel did not notify JAMS it intended to

24  pay Ribeiro's share of the fee, forcing Ribeiro to actually pay it as the penalty for failure to
    timely pay the invoice was automatic and irreversible default judgment.  *Wood Decl.* at ¶¶ 24,

25  29-36; *Celebrezze Decl.* Ex. D. Sedgwick's counsel later sent Ribeiro's counsel a reimbursement
    check.  *Wood Decl.* ¶ 32.  However, since that time JAMS billed Ribeiro again for the

26  Arbitrator's time, she has not been reimbursed, and Sedgwick has not notified JAMS it will pay
    all of Ribeiro's costs.  *Wood Decl.* ¶ 34-36.  Such facts hardly show the issue of who will pay the

27  arbitrator is "moot" as Sedgwick contends.

28

19

1    maintains the right to terminate or amend the terms of the arbitration agreement as Sedgwick

2    does here.  *See, e.g.*, *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1179 (9th Cir. 2003) ("we

3    conclude that the provision affording Circuit City the unilateral power to terminate or modify the

4    contract is substantively unconscionable").  The Court should consider this as additional

5    evidence of unconscionability on the sliding scale of *Armendariz* factors.

6               **4.**    SEALED          **Is Not Salvageable And Cannot Be Enforced.**

7          Having shown procedural and substantive unconscionability, this Court must decide

8    whether the unconscionability permeates SEALED        such that it should be severed.

9    *Armendariz*, 24 Cal. 4th at 122; *Ingle*, 328 F.3d at 1180; *Macias,* 767 F. Supp. 2d at 1012.

10   Under California law, an arbitration agreement is unconscionable, "permeated with illegality,

11   and unenforceable" when the agreement is used as a vehicle for the waiver of statutory rights,

12   like those created by Title VII or FEHA. *Ellis,* 224 Cal. App. 4th 1213 at 1224; *Martinez,* 118

13   Cal. App. 4th at 119.

14         Here, Sedgwick initiated arbitration just days after the EEOC said it would investigate in

15   order to deprive Ribeiro of her opportunity to vindicate her statutory rights, including her right to

16   be free from discrimination and retaliation.  Sedgwick initiated its Demand for Arbitration

17   seeking declaratory relief that would not be available to it in Court.  Once in arbitration,

18   Sedgwick attempted to deprive Ribeiro of an effective forum to vindicate her statutory rights and

19   refused to modify the arbitration provision to ensure that arbitration offered Ribeiro an

20   opportunity to effectively vindicate her rights.

21         It is not this Court's obligation to rewrite SEALED        or other provisions to make

22   Sedgwick's agreement enforceable.  Accordingly, the Court should deny Defendant's motion to

23   compel in its entirety and excise SEALED       from the parties' agreement.  SEALED

24   , the remainder will continue intact.

25         Alternatively, this Court should excise and modify the following provisions:

26

27

28
                                                          20

| Section | Modification |
|---------|--------------|
| SEAL ED | |

**C.**   **If** SEALED   **Is Enforceable, It Does Not Encompass The Dispute At Issue Over Ribeiro's Statutory Discrimination And Retaliation Claims.**

Even assuming the Court finds that SEALED   is enforceable, the Court must still determine whether the parties' dispute – i.e., Ribeiro's gender discrimination and retaliation claims on which Sedgwick seeks declaratory relief – is covered by it.  As the California Supreme Court recently explained, ordinary rules of construction apply to arbitration provisions, such that ambiguities should be construed against the drafter – particularly for contracts of adhesion. "Where the drafter of a form contract has prepared an arbitration provision whose application to a particular dispute is uncertain, ordinary contract principles require that the provision be construed against the drafter's interpretation and in favor of the nondrafter's interpretation." *Sandquist,* No. 5220812, 2016 Cal. LEXIS 6246 at *16-17; *see also Victoria v. Superior Court*, 40 Cal. 3d 734, 742 (Cal. 1985) (interpreting arbitration clause against drafter under general contract principles and noting "[i]f the arbitration clause is adhesive, ambiguities will be subject to stricter construction against the party with the stronger bargaining power").

**1.**   SEALED   **Is Limited To Matters Set Forth In The Partnership Agreement, Which Does Not Address Discrimination Or Retaliation.**

SEALED

.  *Celebrezze Decl.* Ex. D.  Sedgwick's

21

1  Partnership Agreement does not include any discussion of Equal Opportunity Practices,

2  discrimination or retaliation.  *Ribeiro Decl.*at ¶ 46.  Nor does the Partnership Agreement

3  reference any of the statutory employment discrimination or retaliation laws under which Ribeiro

4  pursues claims.  *Ribeiro Decl.* at ¶ 46.  Thus, Ribeiro's claims do not arise from matters set forth

5  in the Partnership Agreement.

6          Sedgwick essentially argues that Ribeiro's statutory employment discrimination and

7  retaliation claims are arbitrable because they SEALED

8                                    But by Sedgwick's logic, *any* dispute between a

9  partner and the partnership would be subject to arbitration because the creation and existence of

10 the partnership is a matter addressed in it.

11         SEALED

12

13

14

15

16

17

18

19

20

21

22

23 Sedgwick fails to honor the language in the "take it or leave it" document it actually drafted:

24    ➤  SEALED

25

26

27

28

22

1   *Celebrezze Decl.* Ex. D (emphasis added).  Each of those words must be given meaning,

2   including words that limit the disagreements to matters set forth in the Partnership Agreement.

3          Sedgwick's claim that the arbitration provision applies because Ribeiro's statutory

4   employment discrimination and retaliation claims involve her compensation and promotion

5   ignores the true nature of those claims. The Partnership Agreement describes the process for

6   making those decisions – but Ribeiro does not allege those processes were not followed. She

7   alleges that following them resulted in unlawful discrimination and retaliation.  No interpretation

8   of the Partnership Agreement could find those are matters as set forth in the Partnership

9   Agreement, because the Agreement is silent as to those topics.

10          To permit Sedgwick to now expand the scope of that agreement to every dispute between

11   the parties is not only unfair, but unjustified under the basic rules of contract interpretation.

12   *Sandquist*, No. 5220812, 2016 Cal. LEXIS 6246, at *16-17.  As explained below, the legal

13   claims giving rise the parties' disagreements here are not referenced in the Partnership

14   Agreement – they appear only in a separate agreement between the parties:  Sedgwick's Partner

15   Handbook.  Thus, the parties' dispute over unlawful discrimination or retaliation is not a dispute

16   SEALED

17
   **2.     Ribeiro's Gender Discrimination And Retaliation Claims Arise
            From Legal Claims Addressed In A Separate Contract, The
18          Partner Handbook.**

19          In addition to the Partnership Agreement, Sedgwick provides its new partners with a

20   Partner Handbook.  *Ribeiro Decl.* at ¶ 5. Under the heading SEALED

21

22

23

24

25          The Partner Handbook does not contain any provision

26   requiring the parties to arbitrate disagreements related to complaints of discrimination and

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT SEDGWICK LLP'S MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDINGS - Case No. 3:16-04507 WHA

1   retaliation.  *Ribeiro Decl.* at ¶ 5.[15] SEALED                                        does not

2   provide for arbitration of disputes concerning provisions in the Handbook – only matters in the

3   Partnership Agreement.

4          Here, the Handbook constitutes an implied-in-fact contract because it sets forth rules and

5   obligations regarding the parties' relationship on which Ribeiro relied.  *See Guz v. Bechtel Nat'l*

6   *Inc.*, 24 Cal. 4th 317, 336-337, 344 (2000) (holding employee handbook created implied-in-fact

7   agreement where employee reasonably relied upon promises set forth therein).  Ribeiro relied on

8   the Handbook in submitting her complaints of gender discrimination and retaliation to the firm's

9   then-General Counsel.  *Ribeiro Decl.* at ¶¶ 41-44, 47; *Wood Decl.* at ¶¶ 3-6.

10          Ribeiro hoped that, contrary to her prior experiences, the firm would fulfill the promises

11  set forth in the Handbook not to discriminate, to investigate her complaint, and not to retaliate

12  against her.  By acting in reliance on the promises set forth in the Handbook, Ribeiro and

13  Sedgwick formed a separate contract.  *See Hillsman v. Sutter Comm. Hosp.*, 153 Cal. App. 3d

14  743, 753 (1984) (holding handbook was a contract because it set forth "a mutual understanding

15  that the rules or procedures" in it applied to the parties).

16          To the extent her statutory employment discrimination and retaliation claims arise from

17  any contract or agreement with Sedgwick, it is clearly the Handbook and not the Partnership

18  Agreement.  When parties have entered into two separate agreements and only one includes an

19  arbitration provision, arbitration will only apply to disputes arising from the agreement

20  containing the provision. *See Goodrich Cargo Sys. v. Aero Union Corp.,* No. C06-06226, 2006

21  U.S. Dist. LEXIS 93680, *5-7 (N.D. Cal. Dec. 14, 2006) ("Only the latter agreement contains an

22  arbitration clause, and it follows that the arbitration clause only applies to disputes as to those

23  aspects of the transaction that are actually covered by the latter agreement."); *see also Int'l*

24  *Ambassador Programs v. Archexp*o, 68 F.3d 337 (9th Cir. 1995) (holding that an arbitration

25

26  [15] SEALED

27          *Ribeiro Decl.* at ¶ 45. However, there is no overlap between the
    Partnership Agreement and Partner Handbook as it pertains to complaints of discrimination at

28  the firm or retaliation, because the Partnership Agreement does not discuss those subjects.

                                                24

1   award did not preempt or preclude a judgment obtained in another lawsuit between the same

2   parties and involving the same business relationship where the disputes arose under two separate

3   agreements, one providing for arbitration and one not).

4          Per *Sandquist*, where the drafter of a form contract has prepared an arbitration provision

5   whose application to a particular dispute is uncertain, the provision must be construed against the

6   drafter's interpretation and in favor of the nondrafter's interpretation.  *Sandquist*, No. 5220812

7   2016 Cal. LEXIS 6246, at *16-17.  Given the existence of a separate and distinct agreement

8   between the parties on the subject of discrimination and retaliation (i.e., the Handbook, SEALED

9          should not be construed to encompass the parties' dispute on that subject.

10         To require Ribeiro to arbitrate this case would be inconsistent with the "first principle" of

11  arbitration, that "a party cannot be required to submit [to arbitration] any dispute which [s]he has

12  not agreed so to submit." *Three Valleys Mun. Water Dist.,* 925 F.2d at 1142.  Ribeiro never

13  agreed to arbitrate her statutory employment discrimination and retaliation claims – matters

14  referenced only in Sedgwick's Handbook – so Sedgwick's motion must be denied.

15  **IV.     CONCLUSION**

16         For the foregoing reasons, Defendant's motion to compel arbitration should be denied.

17  Dated:  September 20, 2016              THE WOOD LAW OFFICE, LLC

18                                                          /s/J. BRYAN WOOD

19                                          _____

20                                          J. BRYAN WOOD,
                                            Co-Counsel for Plaintiff Traci Ribeiro, on behalf
21                                          of herself and all others similarly situated

22  SHARON R. VINICK (State Bar No.          J. BRYAN WOOD (Bar No. IL6270845)
    129914)                                  THE WOOD LAW OFFICE, LLC
23  LEVY VINICK BURRELL HYAMS LLP            303 W. Madison St., Suite 2650
    180 Grand Avenue, Suite 1300            Chicago, Illinois 60606
24  Oakland, California 94612               Main: (312) 554-8600
    Direct: (510) 318-7702                  Fax: (312) 577-0749
25  Main: (510) 318-7700                     Admitted to Practice *Pro Hac Vice*
    Fax: (510) 318-7701                      bryan@jbryanwoodlaw.com
26  sharon@levyvinick.com

27                                          Attorneys for Plaintiff Traci Ribeiro.

28                                          25